CASE NO. **16CI01504**

JEFFERSON CIRCUIT COURT
DIVISION_____

KASHIYA NWANGUMA

and

MOLLY SHAH

JEFFERSON CIRCUIT COURT
DIVISION THREE (3)

and

HENRY BROUSSEAU

PLAINTIFFS

vs.

**DONALD J. TRUMP**
          SERVE:      Donald J. Trump
                      c/o The Trump Organization
                      725 Fifth Avenue
                      New York, New York 10022

**DONALD J. TRUMP FOR PRESIDENT, INC.**
          SERVE:      CT Corporation System
                      4701 Cox Road, Suite 285
                      Glen Allen, Virginia 23060

**MATTHEW JOHN HEIMBACH**
**a/k/a MATTHEW WARREN HEIMBACH**
          SERVE:      Matthew Heimbach
                      6045 Budmar Avenue
                      Cincinnati, Ohio 45224-2409

**ALVIN BAMBERGER**
          SERVE:      Alvin R. Bamberger
                      4491 Fork Road
                      Cincinnati, Ohio 45247

A COPY
ATTEST: DAVID L. NICHOLSON, CLERK
JEFFERSON CIRCUIT COURT
LOUISVILLE, KENTUCKY

BY _____ D.C.

and

**UNKNOWN DEFENDANT**

**DEFENDANTS**

## VERIFIED COMPLAINT

Plaintiffs, Kashiya Nwanguma, Molly Shah, and Henry Brousseau, for their Complaint against the Defendants, Matthew John Heimbach, Alvin Bamberger, Donald J. Trump for President, Inc., and Donald J. Trump, state the following:

## INTRODUCTION

*"Peace is not absence of conflict, it is the ability to handle conflict by peaceful means."*
--Ronald Reagan

Protesters from every side of the political spectrum have been a regular feature in American politics, and at American political rallies, since time immemorial. They regularly appear at public functions attended by the President of the United States, and in this campaign season, every candidate has seen his share of protesters. But one – Donald J. Trump – has decided to break with American tradition and the rule of law by inciting his supporters to physically attack protesters at his rallies and campaign appearances. Worse still, these attacks often carry with them the blatant stamp of racism, religious intolerance, misogyny, or any combination of the three. This is an action for incitement pursuant to Kentucky statutory law, and an action for common law assault, battery, negligence, gross negligence, and recklessness resulting from incidents facilitated, incited, encouraged, endorsed, and subsequently ratified by Defendant Trump at a campaign rally in Louisville, Kentucky, on March 1, 2016.

## JURISDICTION AND VENUE

1.     Jurisdiction is proper under Ky. Const. §112 because the causes of action set forth below arise under Kentucky statutes and common law, the injuries occurred in Kentucky, the total damages claimed exceed the jurisdictional threshold of the Circuit Court, and the Plaintiffs all reside in Kentucky.

2.      Venue is proper because the injuries occurred in Jefferson County and the Plaintiffs reside in Jefferson County.

**PARTIES**

**I.      MATTHEW HEIMBACH**

3.      Defendant Matthew John Heimbach, a/k/a Matthew Warren Heimbach, is a supporter of Defendant Donald J. Trump.

4.      Heimbach has been described by the Southern Poverty Law Center as "the face of a new generation of white nationalists."

5.      Heimbach is affiliated with the Traditionalist Worker Party, a recognized hate group and self-proclaimed political party which is ideologically opposed to, among other things, what it calls "miscegenation," i.e., different ethnicities living together in the same community and intermarrying. Heimbach himself has been quoted as saying, "It's separation or mongrelization."[1]

6.      Heimbach has even been banned outright from entering the United Kingdom, on the grounds that his presence may "foster hatred which might lead to inter-community violence in the UK."[2]

7.      Heimbach has been quoted as saying of Trump: "This is the first time since Buchanan in the '90s and George Wallace in '68 where you have a guy outside the mainstream speaking to white interests."

8.      Heimbach and the Traditionalist Worker Party have actively been engaged in recruiting supporters of Donald Trump. In fact, Heimbach has even stated, "We have the potential to be able to work with so many of these millions of families to be able to then move

---

[1] https://www.splcenter.org/fighting-hate/extremist-files/individual/matthew-heimbach
[2] https://www.splcenter.org/hatewatch/2015/11/04/white-nationalist-matthew-heimbach-banned-united-kingdom

them in our direction. Donald Trump is a gateway drug...we can then move them from civic nationalism and populism to nationalism for us-and these people are ready for our message."

9.      Heimbach is a Caucasian male and is approximately 25 years of age.

10.     Heimbach is a resident of Ohio.

## II.   ALVIN BAMBERGER

11.     Defendant Alvin Bamberger is a supporter of Donald J. Trump.

12.     Bamberger is a Caucasian male and is approximately 75 years of age.

13.     Bamberger is a resident of Ohio.

## III.  DONALD J. TRUMP

14.     Defendant Donald J. Trump was the former host of a popular reality television show from 2005-2015, a former part-owner of the Miss Universe pageant, an occasional featured guest of WWE's *Wrestlemania,* and is the current front-runner for the Republican nomination in the race for President of the United States of America. Trump has recently intimated that he may be planning to run for President of the United States on an independent ticket if he is not the Republican nominee.

15.     Trump is a resident of New York.

## IV.   DONALD J. TRUMP FOR PRESIDENT, INC.

16.     Defendant Donald J. Trump for President, Inc. (hereinafter, the "Trump Campaign"), is a corporation existing under the laws of Virginia.

17.     The Trump Campaign contracted with the Kentucky International Convention Center ("KICC"), which is a state agency owned and operated by the Kentucky State Fair Board, to conduct business at a public building in Kentucky, i.e., the campaign rally discussed below.

## V.     UNKNOWN DEFENDANT

18.     In addition to the above-named Defendants, there is an additional Defendant believed to be a Caucasian woman, who is responsible for punching Plaintiff Brousseau, as set forth in further detail below.

19.     Upon information and belief, this unidentified woman is affiliated with Defendant Heimbach and the Traditionalist Worker Party.

20.     Upon information and belief, this unidentified woman is a supporter of Donald J. Trump.

## VI.     KASHIYA NWANGUMA

21.     At all times relevant to this Complaint, Plaintiff Kashiya Nwanguma was a 21-year-old college student majoring in Public Health.

22.     Nwanguma is an African-American who was born and raised in the United States.

23.     Nwanguma resides in Jefferson County, Kentucky.

## VII.     MOLLY SHAH

24.     At all times relevant to this Complaint, Plaintiff Molly Shah was a 36-year-old Caucasian mother and activist.

25.     Shah is a former public-interest attorney and special-education teacher for the Jefferson County Public Schools.

26.     Shah resides in Jefferson County, Kentucky.

## VIII.     HENRY BROUSSEAU

27.     At all times relevant to the events described in this Complaint, Plaintiff Henry Brousseau was a 17-year-old Caucasian high school student.

28.     Brousseau resides in Jefferson County, Kentucky.

5

## FACTUAL BACKGROUND

### I.     THE RALLY

29.     On March 1, 2016, pursuant to an agreement between the Commonwealth of Kentucky and Defendant Donald J. Trump for President, Inc., a rally in support of Defendant Trump occurred in Louisville, Kentucky, at KICC (hereinafter "the Rally").

30.     At the Rally, as discussed in further detail below, individuals who attempted to peacefully protest Trump were forcibly removed by Trump's supporters, pursuant to Trump's directives.

31.     Tickets and/or entry to the event were not denied to people simply because they had political views which differed from Trump and/or his supporters.

32.     Instead of allowing his own security, the Secret Service, or KICC security to remove protesters, Trump stopped his half-hour speech five different times to point out protesters and, in most cases, to tell his crowd of supporters to "get 'em out of here."

33.     Plaintiffs were some of the individuals Trump directed the crowd to "get out of here."

34.     On or around the time the injuries occurred to the Plaintiffs, as described below, Trump also stated: "Don't hurt 'em. If I say 'go get em,' I get in trouble with the press, the most dishonest human beings in the world."

35.     Trump went on to state: "In the old days, which isn't so long ago, when we were less politically correct, that kinda stuff wouldn't have happened. Today we have to be so nice, so nice. We always have to be so nice." Then Trump went into a discussion about waterboarding, and how it is "absolutely fine."

6

## II.   KASHIYA NWANGUMA

36.    At the time of the rally, Plaintiff Kashiya Nwanguma was a 21-year-old student attending classes at the University of Louisville.

37.    Nwanguma attended the Rally with the intention of peacefully protesting Trump.

38.    Nwanguma traveled to the Rally alone. She was not with a group at the time of her assault, did not enter with a group, and took no part in the group protests.

39.    Nwanguma is not affiliated with the Black Lives Matter movement.

40.    Supporters of Defendant Trump called Nwanguma a "nigger" and a "cunt" during the Rally.

41.    Nwanguma heard a number of other racial and ethnic slurs used by Trump's supporters during the Rally.

42.    Nwanguma did not intentionally make physical contact with any attendee of the Rally.

43.    Nwanguma did not threaten, curse at, or use any form of offensive language toward any attendee of the Rally.

44.    Nwanguma held up a sign depicting Defendant Trump's face on the body of a pig.

45.    Trump ordered his supporters to "get [Nwanguma] out of here."

46.    Nwanguma was thereafter violently assaulted by numerous protesters (as discussed further below) until she was forced to leave the Rally. A video of this assault went viral soon thereafter, and is readily available to be viewed on the internet.

47.    At no point did a police officer come to Nwanguma's aid, nor did they assist in her removal. Trump's supporters, upon Trump's command, took it upon themselves to use physical force to remove her from the Rally.

7

48.    The most aggressive of those who assaulted Nwanguma were Defendants Heimbach and Bamberger.

49.    Heimbach, who is nearly twice Nwanguma's size, repeatedly shoved Nwanguma and shouted "leftist scum" at her.

50.    Eventually Heimbach returned to the crowd, and Bamberger began aggressively moving Nwanguma further through the crowd by shoving her and striking her.

## III.    MOLLY SHAH

51.    Plaintiff Molly Shah attended the Rally with the intention of peacefully protesting Trump.

52.    Shah did not intentionally make harmful physical contact with any attendee of the Rally.

53.    Shah, like Nwanguma, heard numerous ethnic and racial slurs used by Trump supporters at the Rally.

54.    Inside the Rally, Shah saw a group of 4-6 people standing wearing black t-shirts with the words "tradworker.org" on them, which is the website for the Traditionalist Worker Party. One of these people was Defendant Heimbach.

55.    Shah continued to observe this group over the course of three hours, and watched them talk to dozens of Trump supporters. At no time did she witness anyone involved in the Trump Campaign or KICC security approach them or question their presence.

56.    Shah's group began to peacefully protest. When Trump told the audience to "get 'em out of here," Heimbach and his group rushed in and began physically assaulting the protesters.

8

57.     Shah witnessed the Unknown Defendant who was with Heimbach's group punch Plaintiff Brousseau.

58.     Shah began to walk out and was shoved hard from behind by Defendant Heimbach.

59.     As Shah continued to the back of the convention center, she was shoved and pushed by multiple Trump supporters.

60.     As a result of the above-described incidents, Shah experienced pain and difficulty sleeping for several days after the Rally.

IV.     **HENRY BROUSSEAU**

61.     Plaintiff Henry Brousseau attended the Rally with the intention of peacefully protesting Trump.

62.     Brousseau did not intentionally make harmful physical contact with any attendee of the Rally.

63.     Brousseau, who was a 17-year-old high-school student, began to peacefully protest. When Trump told the audience to "get 'em out of here," Heimbach and his group rushed in and began physically assaulting the protesters.

64.     The Unknown Defendant, who is believed to be one of the Traditionalist Worker Party "comrades," punched Brousseau in the stomach.

65.     Since that time, Brousseau has experienced anxiety and nightmares.

V.      **MATTHEW HEIMBACH**

66.     Heimbach went to the Rally dressed in a Traditionalist Worker Party t-shirt and a red hat which said "Make America Great Again," a Trump campaign slogan.

67.    Upon information and belief, Heimbach went to the Rally with other Traditionalist Worker Party activists (which he calls "comrades") in hopes of recruiting more members from among Trump's supporters.

68.    As described above, Heimbach personally physically attacked Plaintiffs Nwanguma and Shah. Nwanguma's assault and battery was captured on video.

69.    Afterwards, Heimbach wrote and spoke extensively about the Rally, admitting to his role in the physical altercation and implying that Nwanguma had initiated it.

70.    In one blog post, Heimbach stated:

> Now there's some viral footage of several heated moments in Louisville. One features yours truly helping the crowd drive out one of the women who had been pushing, shoving, barking, and screaming at the attendees for the better part of an hour. I'll avoid any additional Trump events to ensure that I don't become a distraction, but the entire point of the BLM's tactics is to push people until they push back. It won't be me next time, but White Americans are getting fed up and they're learning that they must either push back or be pushed down.

71.    Despite the fact that multiple videos exist of the entire Rally, there is no videographic evidence of Nwanguma or any other Plaintiff "shoving, barking, and screaming" at attendees, because that simply did not happen.

72.    In an interview with "Radio Aryan," Heimbach stated he was refraining from attending further rallies "because I want Donald Trump to continue to destroy the established Republicans, make the Jews around the world quake in their boots, and make leftists angry."

## VI.   ALVIN BAMBERGER

73.    Defendant Alvin Bamberger shoved Nwanguma, and continued to shove her repeatedly while she was exiting the Rally.

74.    During the rally on March 1, 2016, Bamberger was wearing a uniform associated with the Korean War Veterans Association ("KWVA").

75.     Subsequently, after concerns were raised about Bamberger's behavior and affiliation with KWVA, Bamberger wrote a letter to the KWVA admitting his role in the assault and battery of Nwanguma.

76.     In the letter, Bamberger writes: "Trump kept saying 'get them out, get them out' and people in the crowd began pushing and shoving the protesters, . . . I physically pushed a young woman down the aisle toward the exit, an action I sincerely regret."

77.     Bamberger said he learned only afterwards that some of the Trump supporters "standing right next to [him] were members of a white supremacy group."

78.     Upon information and belief, the "white supremacy group" Bamberger refers to is the Traditionalist Worker Party, one of whom was Defendant Heimbach. Bamberger also calls them a "hate group."

79.     "Unfortunately my state of mind after being knocked down and hurt[ing] myself, and being caught between a group of white supremacists and Black Lives Matter protesters contributed to my behavior however, there is no excuse for my actions," Bamberger wrote.

## VII.    TRUMP'S DIRECTIVES

80.     As discussed above, and as admitted to by Defendant Bamberger in his letter, the actions taken against Plaintiffs by Defendants and other attendees of the Rally were pursuant to the explicit directives given by Defendant Trump.

81.     Specifically, Trump's repeated order to "get them out" was directed to his supporters, and could have no other reasonable meaning but to remove protesters, including the Plaintiffs, using unwanted, harmful physical force.

82.     Each time he said, "get them out," Trump intended for his supporters to use unwanted, harmful physical force to remove protesters, including the Plaintiffs; knew or

reasonable should have known that his supporters would act upon his orders; and watched as his

supporters physically removed and accosted Plaintiffs at the Rally.

## VIII.   THE AFTERMATH

83.     All plaintiffs have filed reports with the Louisville Metro Police Department. As

of the filing of this Complaint, the incident described above - much of which was captured on

video and occurred in the presence of thousands of witnesses - has been under investigation for

approximately a month with no arrests.

## IX     TRUMP'S INCITEMENT AND ENDORSEMENT OF VIOLENCE AT SIMILAR
EVENTS

84.     The Rally referred to above is not the first or last incident of its kind.

85.     At a Trump rally held on November 21, 2015 in Birmingham, Alabama, a

protester was attacked, i.e., "roughed up." Trump commented on this incident, stating that the

protester "started screaming by himself" and "he should have been, maybe he should have been

roughed up." Trump further stated that "it was absolutely disgusting what [the protester] was

doing," i.e., protesting against Trump.

86.     On February 1, 2016 at a rally in Cedar Rapids, Iowa, Trump instructed those in

the crowd to "knock the crap out of" anyone who was "getting ready to throw a tomato." Trump

followed this instruction by saying, "Seriously. Okay? Just knock the hell..." Trump continued

by ensuring the crowd that if and when they took heed of his instruction, he would cover their

legal fees: "I promise you, I will pay for the legal fees. I promise. I promise."

87.     On February 22, 2016 at a rally in Las Vegas, Nevada, Trump responded to a

protester by alluding to the fact that protesters had it too easy in present times. He expressed his

desire for the way things once were: "I love the old days. You know what they used to do to guys

like that when they were in a place like this? They'd be carried out on a stretcher, folks."

12

88.     Trump told his supporters that he would like "to punch [the protester] in the face."

89.     On March 4, 2016, at a rally in Warren, Michigan, Trump gave the instruction to remove the protester. In doing so, Trump added the disclaimer that those removing him should not hurt him. However, this disclaimer was overshadowed by Trump's immediately following statement: "If you do [hurt him], I'll defend you in court. Don't worry about it."

90.     On March 8, 2016, Breitbart reporter Michelle Fields was grabbed and thrown to the ground at a Trump press conference. Fields made allegations that she was grabbed by Trump's Campaign Manager. Subsequently, Fields filed a police report. Trump's response was that Fields "made the story up." Trump's Campaign Manager has since been arrested for assault.

91.     On March 9, 2016 at a rally in Fayetteville, North Carolina, Trump, again, spoke of the "good 'old days" when protesters were treated "very, very rough." Trump asserted that such treatment deterred the protesters from doing it "again so easily."

92.     On March 11, 2016 at a rally in St. Louis, Missouri, Trump claimed that "part of the problem and part of the reason it takes so long" to remove those protesting was people are too averse to hurting each other. Essentially, Trump advocated that more violence would help to cure the problem.

93.     On March 19, 2016, at a rally in Arizona, a protester was punched and kicked repeatedly after being pointed out and described as "disgusting" by Trump from the stage.

94.     On March 29, 2016 at a rally in Janesville, Wisconsin, a 15-year-old female protester was pepper sprayed in the face and sexually assaulted by two unidentified Trump supporters. As the protester left the rally Trump's supporters erupted with "Hell Yeah," name calling, e.g., "goddamn communist, nigger lover," cries of victory, and an echo of Trump's usual response to protesters: "get 'em out of here!"

95.     Despite this persistent, unmistakable pattern of violence and/or threats of violence at his rallies, neither Trump himself nor Donald J. Trump for President, Inc., have taken adequate measures to ensure that further assaults on protesters are eliminated or at least minimized, and in fact, Trump has continued to encourage the continuation and escalation of such violence in the same manner during the past few months.

## CAUSES OF ACTION

### COUNT I
### BATTERY

96.     The Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

97.     As detailed in above paragraphs, Defendants Heimbach, Bamberger, and Unknown Defendant, without privilege or provocation, intentionally, maliciously, wantonly and/or recklessly made numerous offensive and/or harmful contacts with the persons of the Plaintiffs.

98.     As a result of these harmful contacts, Plaintiffs suffered injuries in excess of the jurisdictional limits of this Court.

### COUNT II
### ASSAULT

99.     The Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

100.     By attacking Plaintiffs, Defendants Heimbach, Bamberger, and Unknown Defendant, intentionally, maliciously, wantonly and/or recklessly caused Plaintiffs to experience

14

apprehension and fright of an immediate harmful and/or offensive contact.

101.    As a result of this apprehension and fright, Plaintiffs suffered injuries in excess of the jurisdictional limits of this Court.

## COUNT III
## INCITEMENT

102.    The Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

103.    As set forth in the description of the events at the Rally above, Defendant Trump, acting individually and as an agent of the Trump Campaign, incited a riot as defined under the Kentucky penal code, KRS 525.040 and KRS 525.010.

104.    In directing his supporters to eject peaceful protesters using harmful physical force, Trump intended to create a public disturbance involving an assemblage of five or more persons which by tumultuous and violent conduct created grave danger of damage or injury.

105.    As a result of Trump's violation of the aforementioned statutes, Plaintiffs were harmed and have the right to recover pursuant to KRS 446.070.

106.    Trump's speech, as set forth above, was calculated to incite violence against the Plaintiffs and others, and does not constitute speech protected by the First Amendment to the United States Constitution or any analogous provision in the Kentucky Constitution.

## COUNT IV
## AGENCY/VICARIOUS LIABILITY

107.    The Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

15

108.    At all times pertinent to the claims set forth above, Defendants Heimbach, Bamberger, and Unknown Defendant were acting as agents of Defendant Trump and/or the Trump Campaign.

109.    The Trump Campaign is liable under a theory of *respondeat superior* or is otherwise vicariously liable for both the actions of Donald Trump himself and Trump's agents at a Trump Campaign event such as the Rally in question.

110.    If the Trump Campaign and/or Trump himself is not jointly and severally liable for the actions of Heimbach and Bamberger, they should at least be apportioned fault for their actions as described above.

111.    Defendant Trump and the Trump Campaign made no effort to suppress other offensive speech - e.g., racial and ethnic slurs, speech promoting racial apartheid, and speech unequivocally courting members for recognized hate groups - but selectively targeted the protesters for physical violence because of the content of their speech.

112.    Trump knew or should have known based on the prior actions of his supporters at the above-described rallies that occurred prior to the Rally, that when he used the phrase "get'em out of here" it was reasonable foreseeable that his supporters would physically assault Plaintiffs while they were being removed.

113.    Trump's statements and comments during the Rally called for and sanctioned the physical abuse of Plaintiffs by Heimbach, Bamberger, and Unknown Defendant.

114.    Trump's inducement and encouragement of Heimbach, Bamberger, and/or Unknown Defendant to remove Plaintiffs from the Rally by way of physical force was a substantial factor in causing the Plaintiffs' injuries

115.    Trump knew or should have known that by encouraging members of the audience,

16

including Heimbach, Bamberger, and/or Unknown Defendant, to "get [Plaintiffs] out of here," these individuals would physically assault the Plaintiffs.

**COUNT V**
**NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS**

116.    The Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

117.    Defendants Trump and the Trump Campaign had a duty under Kentucky common law to provide adequate security in order to ensure the safety, protection, and well-being of Rally attendees and the general public in connection with the Rally.

118.    Defendants Trump and the Trump Campaign breached the duties identified above, through their negligent, grossly negligent, and/or reckless actions, as set forth in this Complaint.

119.    In addition, Defendants Trump and the Trump Campaign acted with the absence of even slight care, thus constituting gross negligence and/or recklessness under Kentucky common law.

120.    Trump and the Trump campaign knew or should have known that relying on the crowd of Trump supporters to provide security, including making them responsible for ejecting peaceful protesters from the crowd, was an inadequate and entirely reckless, or at least negligent/grossly negligent, way in which to provide security.

121.    Trump and the Trump Campaign knew or should have known that by encouraging members of the audience, including Heimbach, Bamberger, and/or Unknown Defendant, to "get [Plaintiffs] out of here," these individuals would physically attack the Plaintiffs.

122.    In particular, the directive to eject a Black woman, when several members of a group that Trump knew or should have known was a recognized hate group were present in the

17

audience, was entirely reckless, or at least negligent/grossly negligent.

123.    As a direct and proximate result of Defendants' breach of their duties, Plaintiff has suffered losses in excess of the jurisdictional limits of this Court.

## COUNT VI
## PUNITIVE DAMAGES

124.    The Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

125.    Defendants acted toward Plaintiff with oppression and/or malice, and with knowledge that serious harm would likely arise from their conduct, thus entitling Plaintiff to recover punitive damages.

## DEMAND FOR RELIEF

**WHEREAS**, Plaintiffs pray as follows:

A.    That the Court award compensatory damages to them as against all Defendants for physical injuries, emotional distress, humiliation, and mental anguish;

B.    That the Court award punitive damages as against all Defendants, in an amount that will deter such conduct by defendants in the future;

C.    For pre-judgment and post-judgment interest and recovery of their costs; and

E.    For any and all other relief to which they may be entitled.

Respectfully submitted,

DANIEL J. CANON, PSC
DAVID N. WARD
CLAY DANIEL WALTON & ADAMS, PLC
101 Meidinger Tower
462 South Fourth Street
Louisville, Kentucky 40202
(502) 561-2005
dan@justiceky.com
david@justiceky.com
*Counsel for Plaintiffs*

GREGORY A. BELZLEY
CAMILLE BATHURST
BELZLEY BATHURST ATTORNEYS
P.O. Box 278
Prospect, Kentucky 40059
(502) 228-5084
gbelzley@aol.com
*Counsel for Plaintiffs*

19

## VERIFICATION

I, Kashiya Nwanguma, state that I have read the foregoing, and the statements contained therein are true to the best of my knowledge and belief.

Kashiya Nwanguma

Subscribed and sworn to before me by KASHIYA NWANGUMA on this _____ day of March, 2016, to be her free act and voluntary deed.

My commission expires: May 9, 2018 .

NOTARY PUBLIC, KY STATE AT LARGE

20

## VERIFICATION

I, Molly Shah, state that I have read the foregoing, and the statements contained therein are true to the best of my knowledge and belief.

_____

Molly Shah

Subscribed and sworn to before me by MOLLY SHAH on this $\underline{31^{st}}$ day of March, 2016, to be her free act and voluntary deed.

My commission expires: __10 - 7 - 18__.

_____

NOTARY PUBLIC, KY STATE AT LARGE

21

## VERIFICATION

I, Henry Brousseau, state that I have read the foregoing, and the statements contained therein are true to the best of my knowledge and belief.

Henry Brousseau

Subscribed and sworn to before me by HENRY BROUSSEAU on this 3\ day of March, 2016, to be his free act and voluntary deed.

My commission expires: May 9, 2018 .

NOTARY PUBLIC, KY STATE AT LARGE

22