UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*ELECTRONICALLY FILED*

| | |
|---|---|
| KASHIYA NWANGUMA, ET AL. ) | |
| *Plaintiffs* ) | |
| ) | |
| vs. ) | CASE NO.  3:16-CV-247-DJH |
| ) | |
| DONALD J. TRUMP, ET AL. ) | |
| *Defendants* ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT HEIMBACH'S MOTION TO STRIKE**

Comes the Plaintiffs, Kashiya Nwanguma, Molly Shah, and Henry Brousseau, and in response to the Motion to Strike filed by Defendant Matthew Heimbach ("Heimbach") (D.N. 11), state as follows:

**I.     INTRODUCTION**

Heimbach asserts that thirteen (13) separate paragraphs in Plaintiffs' Complaint should be struck for being impertinent, immaterial, or scandalous. For the reasons set forth below, Heimbach's Motion must be denied because the Motion is untimely and the facts contained in the thirteen (13) paragraphs all relate to the current controversy.

**II.     FACTS**

On March 31, 2016, Plaintiffs filed a Complaint against Donald J. Trump ("Trump"), Donald J. Trump for President, Inc. (the "Trump Campaign"), Alvin Bamberger ("Bamberger"), and Heimbach alleging claims of battery, assault, incitement, agency/vicarious liability, and negligence, gross negligence and recklessness. Plaintiffs' claims relate to the March 1, 2016, Trump rally that occurred in Louisville, Kentucky. During the rally, Heimbach, Bamberger, and

other Trump supporters violently assaulted Plaintiffs, at the direction of Trump, who ordered his supporters to "get them out" of the rally. (D.N. 1-1, ¶¶ 111-113.)

On April 28, 2016, Heimbach was served with the Complaint. (D.N. 8, ¶ 3.) On May 17, 2016, Heimbach filed a Notice of Consent to Removal, joining the other Defendants in consenting to the removal of Plaintiffs' case from Jefferson County Circuit Court to federal court. (D.N. 8.)

### III. ARGUMENT

#### 1. HEIMBACH'S MOTION IS UNTIMELY

Heimbach's Motion is brought under Fed. R. Civ. P. 12(f), which in relevant part, allows the court to strike from a pleading any immaterial matter. The rule goes on to state that a motion to strike must be made within twenty-one (21) days of the party being served with the pleading containing the matter being attacked. Fed. R. Civ. P. 12(f). Here, Heimbach seeks to strike portions of Plaintiffs' Complaint, which he was served with on April 28, 2016. (D.N. 8, ¶3). Thus, Heimbach's motion had to be filed by May 19, 2016. Because Heimbach's Motion was not filed until May 20, 2016, he is barred from seeking relief under Fed. R. Civ. P. 12(f). *See Pearson v. Countrywide Home Loans, Inc.*, No. 8:13-cv-1075-T-17AEP, 2015 U.S. Dist. LEXIS 15927, at * 4-5 (M.D. Fla. Feb. 10, 2015)(finding that the motion to strike was untimely filed because defendants failed to make the motion within 21 days of receiving the complaint).[1]

While Heimbach's Motion was only one (1) day late, p*ro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *McNeil v. United States*, 508 U.S. 106, 113 (1980). Excusing *pro se* litigants from compliance with the rules of procedure would result in advantage to *pro se* litigants and a disadvantage to parties who retain counsel. As the Supreme Court has noted, "[S]trict adherence to the procedural requirements...is the best guarantee of

---

[1] A copy of the case is attached hereto as **Exhibit 1**.

evenhanded administration of the law." *Id.*, citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980). Consequently, the Court should not consider Heimbach's Motion to Strike because it was not filed within twenty-one (21) days of being served with the Complaint.

### 2. HEIMBACH HAS FAILED TO MEET HIS BURDEN OF PROOF BY SHOWING THAT THE ALLEGATIONS SOUGHT TO BE STRUCK ARE IMMATERIAL, IMPERTINENT, OR SCANDALOUS

Fed. R. Civ. P. 12(f) provides that the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." It is "well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); see *Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998) (noting that courts disfavor motions to strike since they "propose[] a drastic remedy"); *United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 935 (S.D. Ohio 2002); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004 & Supp. 2009) ("[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations. . . may cause some form of significant prejudice . . ..").

In a motion to strike, the burden of proof is on the movant. *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998); *In re EBP, Inc.*, 171 B.R. 601, 603 (Bankr. N.D. Ohio 1994). The burden has been described as "formidable." *Judicial Watch Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264 (D. D.C. 2004). In fact, the Eastern District of Kentucky has described motions to strike "as time wasters" that are "not favored." *Pessin v. Keeneland* Ass'n, 45 F.R.D. 10, 13 (E.D. Ky. 1968). Because of the practical difficulty of deciding cases without a factual record, the motion should be granted only where the matter to

be stricken "has no possible relation to the controversy." *Brown & Williamson*, 201 F.2d at 822. In other words, the motion should be granted only where the allegations "can have no possible bearing upon the subject matter of the litigation." *Canadian Ingersoll-Rand Co. v. D. Loveman & Sons, Inc.*, 227 F. Supp. 829, 831 (N.D. Ohio 1964); *see also Lundy v. Town of Brighton*, 521 F. Supp. 2d 259, 265 (W.D.N.Y. 2007).

In the present matter, Heimbach seeks to strike thirteen (13) allegations that he alleges are impertinent, immaterial, or scandalous. "Immaterial" allegations are those that "have no bearing on the subject matter of the litigation." *Vanden Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 752 (W.D. Ky. 2014). "Impertinent" allegations are "statements that do not pertain or are not necessary to the issues in question." *Id.* "Scandalous" allegations relate to the moral character of an individual or state something in repulsive language that detracts from the dignity of the court. *Id.* As shown below, the allegations in the challenged portions of Plaintiffs' Complaint are neither immaterial, impertinent, nor scandalous, because all of the allegations relate to the subject matter of the current litigation and in no way unduly prejudice Heimbach.

    **i.    Heimbach is Not Prejudiced by the Allegations in the Introductory Paragraph**

Heimbach argues that the following two (2) allegations in Plaintiffs' Complaint are impertinent and immaterial:

> (1)    "Peace is not absence of conflict, it is the ability to handle conflict by peaceful means." (D.N. 1-1, p. 2.)
>
> (2)    "Protesters from every side of the political spectrum have been a regular feature in American politics, and at American political rallies, since time immemorial. They regularly appear at public functions attended by the President of the United States, and in this campaign season, every candidate has seen his share of protesters. But one – Donald J. Trump – has decided to break with American tradition and the rule of law by inciting his supporters to physically attack protesters at his rallies and campaign

4

>appearances. Worse still, these attacks often carry with them the blatant stamp of racism, religious intolerance, misogyny, or any combination of the three." (D.N. 1-1, p. 2.)

In support of his argument, Heimbach alleges that the above facts do not relate to any element of any claim against him and are merely "rhetorical flourish" that has no relevance. (D.N. 11, p. 6.) However, Heimbach's argument lacks merit and he does not identify any prejudice (or even potential prejudice). (D.N. 11, p. 6.)

In *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992), the court held, "[A]llegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial." The court went on to state, that allegations that provide a full understanding of the complaint, when the complaint is read as a whole, should not be struck, unless the allegations unduly prejudice the defendant. *Id.*, see also *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 637-38 (S.D.N.Y. 1975); *Bloombury Woolen Company v. Moosehead Woolen Mills*, 109 F. Supp. 804, 806 (D. Me. 1953).

Here, the above allegations Heimbach seeks to strike pertain to background information on protesters' First Amendment rights to protest at political rallies as well as provide information relating to Trump inciting violence against protesters attending his rallies. The facts Heimbach complains of help with understanding the environment at Trump rallies and give background information on protesters' First Amendment rights. Moreover, Heimbach has failed to put forth a single fact or reason as to how he is unduly prejudiced by the above facts. *Augustus v. Board of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)(stating that a motion to strike should not be granted absent a showing of prejudice to the moving party). Consequently, the Court should deny Heimbach's Motion to Strike Plaintiffs' introductory paragraph.

> ii. **Paragraphs 4, 5, 6, 7, 8, 40, 41, 54, 67, and 72 Relate to Plaintiffs' Claims in this Case and Do Not Unduly Prejudice Heimbach**

Heimbach argues that the following allegations in Plaintiffs' Complaint are impertinent, immaterial, or scandalous:

> (1) "Heimbach has been described by the Southern Poverty Law Center as 'the face of a new generation of white nationalists.'" (D.N. 1-1, ¶ 4.)
>
> (2) "Heimbach is affiliated with the Traditionalist Worker Party, a recognized hate group and self-proclaimed political party which is ideologically opposed to, among other things, what it calls 'miscegenation,' i.e., different ethnicities living together in the same community and intermarrying. Heimbach himself has been quoted as saying, 'It's separation or mongrelization.'" (D.N. 1-1, ¶ 5.)
>
> (3) "Heimbach has even been banned outright from entering the United Kingdom, on the grounds that his presence may 'foster hatred which might lead to inter-community violence in the UK.'"[2] (D.N. 1-1, ¶ 6.)
>
> (4) "Heimbach has been quoted as saying of Trump: 'This is the first time since Buchanan in the '90s and George Wallace in '68 where you have a guy outside the mainstream speaking to white interests.'" (D.N. 1-1, ¶ 7.)
>
> (5) "Heimbach and the Traditionalist Worker Party have actively been engaged in recruiting supporters of Donald Trump. In fact, Heimbach has even stated, 'We have the potential to be able to work with so many of these millions of families to be able to then move them in our direction. Donald Trump is a gateway drug...we can then move them from civic nationalism and populism to nationalism for us-and these people are ready for our message.'" (D.N. 1-1, ¶ 8.)
>
> (6) "Supporters of Defendant Trump called Nwanguma a 'nigger' and a 'cunt' during the Rally." (D.N. 1-1, ¶ 40.)
>
> (7) "Nwanguma heard a number of other racial and ethnic slurs used by Trump's supporters during the Rally." (D.N. 1-1, ¶ 41.)

---

[2] https://www.splcenter.org/hatewatch/2015/11/04/white-nationalist-matthew-heimbach-banned-united-kingdom

> (8) "Inside the Rally, Shah saw a group of 4-6 people standing wearing black t-shirts with the words "tradworker.org" on them, which is the website for the Traditionalist Worker Party. One of these people was Defendant Heimbach." (D.N. 1-1, ¶ 54.)
>
> (9) "Upon information and belief, Heimbach went to the Rally with other Traditionalist Worker Party activists (which he calls 'comrades') in hopes of recruiting more members from among Trump's supporters." (D.N. 1-1, ¶ 67.)
>
> (10) "In an interview with 'Radio Aryan,' Heimbach stated he was refraining from attending further rallies 'because I want Donald Trump to continue to destroy the established Republicans, make the Jews around the world quake in their boots, and make leftists angry.'" (D.N. 1-1, ¶ 72.)

In support of his argument, Heimbach alleges that these facts should be struck because they are highly inflammatory, and his opinions about race relations are irrelevant to the issue of whether he assaulted and battered the Plaintiffs. (D.N. 11, pp. 7-14.) Heimbach's arguments are wholly without merit for several reasons.

First, the mere fact that Heimbach's name is mentioned in an allegation in the Complaint does not mean that the allegation relates only to claims against him. Instead, many of the allegations Heimbach seeks to strike relate to claims against other parties, including Trump and the Trump Campaign. (D.N. 1-1, ¶¶ 96-125.)

Second, the above paragraphs provide background and historical information on Heimbach (D.N. 1-1, ¶ 4), Heimbach's affiliation with the Traditionalist Worker Party, a recognized hate group (D.N. 1-1, ¶ 5), Heimbach's support of Trump (D.N. 1-1, ¶¶ 7, 8), and Heimbach's use of Trump rallies as a way to court new members for the Traditionalist Worker Party (D.N. 1-1, ¶¶ 67, 72). Moreover, these allegations also provide circumstantial evidence that would put Trump and the Trump Campaign on notice that Heimbach is a white nationalist.

The Court in *Makaeff v. Trump University, LLC*, 2011 U.S. Dist. LEXIS 52465 (S.D. Cal. May 16, 2011)[3], denied defendant's motion to strike allegations in the complaint because "where allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken. In *Makaeff*, the defendant argued that the court should strike the allegations in plaintiffs' complaint relating to Trump University targeting of senior citizens, as the court had already dismissed plaintiffs' elder abuse claim. The Court rejected defendant's argument and denied its motion to strike because the allegations, when read with the complaint as a whole, provide a fuller understanding of defendant's misconduct. In this case, the above facts provide background information, which provides a fuller understanding of all Defendants' conduct, as a whole, and Defendants' course of conduct in this case as it relates to Trump inciting supporters to assault protestors at rallies.

Third, the above allegations in no way prejudice Heimbach, despite his argument that his affiliation with a political party or his opinions on race relations has no bearing on this case, and, thus, is prejudicial. (D.N. 11, pp. 7-10, 12-14.) In fact, Heimbach's political affiliation and opinions on race are relevant in the present case for the reasons set forth below, as well as the fact that Heimbach himself interjected his political affiliation in this case by shouting at Nwanguma, "leftist scum." (D.N. 1-1, ¶ 49). In *United States v. Beasley*, the Eleventh Circuit held that the First Amendment's protection of beliefs and associations does not preclude the admission of evidence of a defendant's religious beliefs where they are relevant to a trial issue. 72 F.3d 1518, 1527 (11th Cir. 1996). Here, Heimbach's political affiliation and opinions on race are relevant and not precluded by First Amendment protection.

Fourth, the above allegations support Plaintiffs' claim for punitive damages against Heimbach. There are "two elements involved in assessing punitive damages: (1) the nature and

---

[3] A copy of the case is attached as **Exhibit 2**.

extent of the harm to the plaintiff, and (2) the character of the defendant's act." *Fowler v. Mantooth*, 683 S.W.2d 250, 253 (Ky. 1984). In determining the character of the defendant's act, a jury will look at several factors bearing on the character of defendant's act, which includes, the degree of outrageousness, the extent of culpability, the motives of the wrongdoer, the relationship between the parties, and the existence or absence of provocation. *Id*. Thus, the above allegations show that Heimbach's political party is a hate group, Heimbach is a part of this group hate group, and Heimbach is considered "the face of a new generation of white nationalists. (D.N. 1-1, ¶¶4, 5.) These facts provide circumstantial evidence that Heimbach could have been motivated, in part, to assault Nwanguma because of her race." (D.N. 1-1, ¶22.) If such a fact is proven true during the course of discovery, then that fact supports an award of punitive damages against Heimbach.

Fifth, the above allegations relate to Plaintiffs' claim for punitive damages as well as liability on Plaintiffs' claims for agency/vicarious liability and negligence, gross negligence and recklessness. The above facts support the contention that Trump and the Trump Campaign knew that recognized hate groups attended Trump rallies, individuals were shouting racial slurs at the rally, and Heimbach and the Traditionalist Worker Party were present at the rally. (D.N. 1-1, ¶¶107-123.) Thus, these allegations are not immaterial, impertinent, or scandalous because, if true, they add some perspective about the knowledge of Trump and the Trump Campaign's ties to white nationalists at Trump rallies, as well as Trumps attempt to incite this group of individuals to target Plaintiffs for physical violence. These facts support a claim for punitive damages against Trump and the Trump Campaign for authorizing, ratifying, or failing to anticipate members at the rally, including Defendants, would assault Plaintiffs. *University Medical Center, Inc. v. Beglin*, 375 S.W.3d 783, 793-794 (Ky. 2011).

9

Sixth, at this stage of the litigation, it seems premature for the court to conclude that the above allegations have no possible bearing on the subject matter of this litigation. In *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), it was emphasized by the Second Circuit that courts should avoid deciding evidentiary questions at the early stage of a case when no discovery has been taken:

> Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint - on the grounds that the material could not possibly be relevant - on the sterile field of the pleadings alone.

*See also Atlantic City Electric Company v. General Electric Company*, 207 F. Supp 620, 624 (S.D.N.Y. 1962)("'Matter[s] will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied...In suits involving multiple and complex issues greater latitude in pleading may be allowed since the impertinence may not be so clear.'")(citations omitted). Here, the allegations sought to be struck relate to Plaintiffs' claims as well as provide background information and context to the Complaint. Given the numerous issues and parties in this case, along with the lack of any discovery, the Court must deny Heimbach's Motion as he failed to show that the above allegations could not possibly be relevant to any of Plaintiffs' claims.

Consequently, for the above stated reasons, the Court should deny Heimbach's Motion to Strike paragraphs 4, 5, 6, 7, 8, 40, 41, 54, 67, and 72.

   **iii. Paragraph 83 Provides Background Information and In No Way is Prejudicial to Heimbach**

Heimbach alleges that the following allegation in Plaintiffs' Complaint is impertinent and immaterial:

> "All plaintiffs have filed reports with the Louisville Metro Police Department. As of the filing of this Complaint, the incident described above - much of which was captured on video and occurred in the presence of thousands of witnesses - has been under investigation for approximately a month with no arrests." (D.N. 1-1, ¶83.)

However, Heimbach's argument is without merit.

The allegations contained in paragraph 83 of Plaintiffs' Complaint are not impertinent or immaterial because the facts pertain to background information about what happened to Plaintiffs and what actions Plaintiffs took after being assaulted at the Trump rally. *LeDuc*, 814 F. Supp. at 830. Moreover, Heimbach has failed to set forth any facts that show how paragraph 83 is unduly prejudicial to him. *Augustus*, 306 F.2d at 868. Consequently, the Court must deny Heimbach's Motion to Strike paragraph 83.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Heimbach's Motion to Strike should be denied.

               Respectfully submitted,

                /s/ David N. Ward
               Hon. Daniel J. Canon
               Hon. David N. Ward
               CLAY DANIEL WALTON & ADAMS, PLC
               462 South Fourth Street, Suite 101
               Louisville, Kentucky 40202
               (502) 561-2005
               dan@justiceky.com
               david@justiceky.com
               *Counsel for Plaintiffs*

                Hon. Gregory A. Belzley
                Hon. Camille Bathurst
                BELZLEY BATHURST ATTORNEYS
                P.O. Box 278
                Prospect, Kentucky 40059
                (502) 228-5084
                gbelzley@aol.com
                *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I certify that on June 13, 2016, the above was electronically filed with the Clerk of the Court by using the CM/ECF filing system and copied to all registered CM/ECF participants in the above-styled action.

                */s/ David N. Ward*
                DAVID N. WARD