UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KASHIYA NWANGUMA, ET AL.       CASE NO.:  3:16-cv-247-DJH

  PLAINTIFFS,

v.

DONALD J. TRUMP, ET AL.

  DEFENDANTS.

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' brief confirms they have not "state[d] a claim to relief that is plausible on its face" as to Mr. Trump or Donald J. Trump for President, Inc. ("Defendants"). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Their complaint should be dismissed for one simple reason: Mr. Trump's statement ("Get them out of here") is fully protected by the First Amendment. In their brief, Plaintiffs struggle to get around that fact by imputing an implausible, illegal intention to Mr. Trump; attempting to amend their complaint; and, ultimately, trying to gut the First Amendment. Plaintiffs refuse to accept Mr. Trump's statement for what it was—a call to peacefully remove protesters, instead implausibly construing that statement as a call to riot. Plaintiffs try to show otherwise by invoking *other* events, but those events are beyond the scope of their complaint and, regardless, do not negate the reality that Mr. Trump's *statement* was a legitimate, legal request that protesters be removed. Finally, and most troubling, Plaintiffs argue that speakers can be sued for *negligently* inciting a riot. That rule, if correct, would upend the First Amendment and risk silencing every controversial speaker based on the reactions of his listeners. This Court should decline Plaintiffs' invitation and instead dismiss the complaint.

1

I.     **MR. TRUMP'S ALLEGED STATEMENT IS PROTECTED BY THE FIRST AMENDMENT.**

    A.     **The Statement Is Entitled To First Amendment Protection.**

Plaintiffs' complaint suffers a fundamental and incurable flaw: Mr. Trump's alleged statement is protected by the First Amendment. The statement was a lawful, legitimate request for protesters to be removed from a private event. Tellingly, Plaintiffs never fully address the standard for their claim of incitement, which requires that: "(1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 246 (6th Cir. 2015). Instead, Plaintiffs attempt to muddy the waters by asserting (at 27) that "there is no jurisprudential reason to protect Trump's speech in this instance." That argument turns the First Amendment on its head. It is not the speaker who must show his speech is entitled to protection. It is the person wishing to punish speech who must show the speech is not protected. And "[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002).

For the same reason, Plaintiffs' claim (at 28) that Mr. Trump's statement "did not have expressive or artistic value" is incorrect. If nothing else, the statement showed Mr. Trump's disagreement with the protesters. But even assuming the statement had no expressive content, "the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Statements containing "nothing of any possible value to society . . . are as much entitled to the protection of free speech as the best of literature." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 796 n.4 (2011). Thus, Mr. Trump's statement, even if it had no meaning, still comes under the umbrella of the First Amendment.

Plaintiffs attempt (at 28–31) to analogize Mr. Trump's statement to threats, fighting words, and even obscenity. But their analogies prove unsuccessful. As to threats, Plaintiffs rely on *Virginia v. Black*, where individuals were prosecuted for burning crosses. 538 U.S. 343, 348–52 (2003). Even accepting the inapt comparison of cross burning to Mr. Trump's statement, *Black* held the state could only proscribe cross burning done *with intent* to intimidate. *Id.* at 362. Here, there is nothing to suggest Mr. Trump intended any harm to come to the protesters. Indeed, if saying, "If they ever make me carry a rifle, the first man I want to get in my sights is L.B.J." is not a threat, then certainly "Get them out of here" is not one either. *Watts v. United States*, 394 U.S. 705, 706 (1969).[1]

As to fighting words, those are statements that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). In the seventy years since *Chaplinsky*, the Supreme Court has never upheld a fighting-words conviction. Nevertheless, Mr. Trump's statement did not "direct personal insult" nor was it "an invitation to exchange fisticuffs." *Texas v. Johnson*, 491 U.S. 397, 409 (1989).

Finally as to obscenity, Plaintiffs simply reargue that Mr. Trump's statement is without value and so should be excluded from First Amendment protection. But even when it comes to obscenity, speech cannot be suppressed unless it is "patently offensive" and lacks any "serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973). Mr.

---

[1] Plaintiffs' reliance (at 31) on *United States v. White* is misplaced. 610 F.3d 956 (7th Cir. 2010). There the defendant published a juror's personal information and said the juror "deserved assassination." *Id.* at 957–62. That example of a threat is a far cry from a call to remove disruptive protesters. The other cases Plaintiffs cite are similarly inapt. In *United States v. Sattar*, the defendant urged Muslims to "kill [Jews] wherever they are." 272 F.Supp.2d 348, 374 (S.D.N.Y. 2003). In *United States v. Rahman*, the defendant told his follower to "tur[n] his rifle's barrel to President Mubarak's chest, and kil[l] him." 189 F.3d 88, 117 (2d Cir. 1999). And in *United States v. Hale*, the defendant and his accomplice discussed "exterminat[ing] the rat," referring to a judge. 448 F.3d 971, 982–83 (7th Cir. 2006).

3

Trump's statement was not patently offensive because even if "protected speech may be offensive to some" that "does not justify its suppression." *Carey v. Population Servs. Int'l*, 431 U.S. 678, 701 (1977). And the statement had value because it expressed Mr. Trump's disagreement with the protesters.

**B.     The Statement Was Not Incitement.**

Turning to Plaintiffs' actual claim—incitement of a riot—"[i]t is not an easy task to find that speech rises to such a dangerous level that it can be deemed incitement to riot." *Bible Believers*, 805 F.3d at 246. Indeed, since 1969, the Supreme Court has yet to identify a statement that rises to the level of inciting a riot. To the contrary, the Court has held that a wide range of over-the-top, offensive statements are *not* incitement. *See Brandenburg v. Ohio*, 395 U.S. 444, 446 n.1 (1969) (racial slurs); *Hess v. Indiana*, 414 U.S. 105, 107 (1973) (cursing and threats) ; *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982) (cursing and threats). If the inflammatory statements in those cases were not incitement, then "Get them out of here" surely is not. Indeed, when looking at the elements of incitement none of them are adequately alleged in this case because there was no intent to cause violence and no call for illegal action.

**No Intent.**  Plaintiffs argue (at 6) that it is plausible that "Trump ordered the crowd to attack protesters." But Plaintiffs have not "nudged their clai[m] across the line from conceivable to plausible," because they have not alleged any *facts* to support their contention. *Twombly*, 550 U.S. at 570. The only potentially relevant fact in their complaint is that a protester at an Alabama rally was allegedly attacked. Compl. ¶ 85. But a single, isolated event is not enough to establish that Mr. Trump's statement months later in Louisville was a call to attack protesters. And Plaintiffs do not allege the Alabama incident was caused by anything Mr. Trump said.

The other speeches Plaintiffs identify where Mr. Trump supposedly "incite[d]" and "endorse[d]" "violence" are irrelevant. *Id.* at p. 12. Most of the statements came *after* the

4

Louisville speech and had no bearing on it. But even the two speeches Mr. Trump gave prior to Louisville are nowhere near enough to make it plausible that Mr. Trump intended physical harm to the protesters. "[T]he mere abstract teaching . . . of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action." *Noto v. United States*, 367 U.S. 290, 297–98 (1961). And Plaintiffs fail to identify any violence or even physical altercations that occurred during the two prior speeches. *See United States v. Williams*, 553 U.S. 285, 298–99 (2008). While Plaintiffs now attempt (at 22–23) to amend their complaint by adding incidents where violence supposedly occurred, Plaintiffs did not allege these incidents in their complaint. It is well settled that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Payne v. Tenn.*, 2014 WL 3362247, at *4 (W.D. Tenn. July 8, 2014).

In any event, these additional incidents do not create a plausible inference of illegal intent on Mr. Trump's part. The only alleged fact from the Louisville speech that tells us anything about Mr. Trump's state of mind is the statement itself. And "Get them out of here" does not call for any violence at all. The far more reasonable interpretation of Mr. Trump's statement is that he was asking security personnel to peacefully remove rowdy protesters. Indeed, as Plaintiffs admit, Mr. Trump *explicitly said*, "Don't hurt them," confirming Mr. Trump did not intend for any violence. Compl. ¶ 34.

Plaintiffs claim (at 6) that Defendants' argument relies on a premise that "if we think our explanation is better, yours is not plausible." To the contrary, "the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013) ("*Flagstar*"). And "as between the obvious alternative explanation

for the [statement] and" the illegal intent "the plaintiffs ask [this Court] to infer," intent to cause harm to the protesters "is not a plausible conclusion." *Flagstar*, 727 F.3d at 506.

Plaintiffs cite (at 8–9) a number of commentators who have evidently opined that Mr. Trump might be liable for violence that has allegedly occurred. These extra-judicial commentators were not considering Plaintiffs' complaint in this case. But more to the point, even if they were addressing this particular case, their conclusions would be at odds with the Supreme Court because Plaintiffs have not alleged facts that establish an illegal intent. *Brandenburg*, 395 U.S. at 447.

**No Call For Illegal Action.** Plaintiffs claim (at 32–35) that the statement called for illegal action. All of Plaintiffs' arguments on this point fail because on its face the statement did not call for violence of any kind. First, Plaintiffs assert (at 32–33) that Defendants' argument about lawful action is "an affirmative defense (defense of property) within another affirmative defense (First Amendment protection)." It is no such thing. The fact that Mr. Trump's statement did not call for imminent *lawless* action means it is categorically *not* incitement. *Brandenburg*, 395 U.S. at 447. Plaintiffs therefore have no claim.

Second, Plaintiffs argue (at 33–34) that they were not trespassers, despite the fact they admit they came to disrupt a private event. *See* Compl. ¶¶ 37, 51, 61. Plaintiffs have no response to the fact that under Kentucky law, "a landowner or possessor may use that degree of force necessary, or that appears to him to be reasonably necessary under the circumstances to eject an unwelcome trespasser from his premises." *McCoy v. Taylor Tire Co.*, 254 S.W.2d 923, 924 (Ky. 1953). Thus, Mr. Trump was justified in calling for the protesters to be removed. And he gave no indication of what degree of force was necessary (if any). Nonetheless, Plaintiffs claim they were not trespassers because they were never *asked* to leave. Plaintiffs defeat this

6

strawman themselves. Plaintiffs may not have been asked to leave, but they were certainly *told* to leave. Even under Plaintiffs' preferred rule that to be a trespasser one must be informed of his status, Plaintiffs *were* informed because they were told to leave.

Plaintiffs erect a similar strawman when they argue (at 34) that "[p]hysical assault of a trespasser is not *per se* lawful." No one said it was. And Mr. Trump's statement to get the protesters out was not a call to physically assault anyone. It was a call to remove disruptors from a private event. There was no reason to suspect that violence would follow. Regardless, Plaintiffs have no grounds for asserting any right to attend a private event to protest. And though they may have "entered the area in question by lawful permission," once they began their protests "[t]hey knew then that they were in a place they had no right to be." *O'Leary v. Com.*, 441 S.W.2d 150, 157 (Ky. 1969).

At bottom, Plaintiffs' complaint does nothing more than restate the elements for inciting a riot. And Plaintiffs' brief does nothing more than quote their complaint: "Trump **intended** to create a public disturbance involving an **assemblage of five or more persons** which by **tumultuous and violent conduct** created **grave danger** of damage or injury." Opp'n 13 (bold in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For example, Plaintiffs have no response to Defendants' argument that nowhere do Plaintiffs allege *facts* establishing "five or more persons" were involved, as required by KRS § 525.010. They rely on words like "group" and "multiple" crowd members. Compl. ¶¶ 57, 59. But Plaintiffs never specify in their complaint that more than five people were engaged in violence. Further, Plaintiffs have no response to the fact that they did not allege *facts* supporting the assertion that there was "tumultuous and violent" conduct or "grave danger." While the assaults alleged in the

complaint are disturbing, the complaint does not show the Louisville event was "marked by tumult" or "full of commotion and uproar." *Webster's Third International Dictionary* 2462 (defining "tumultuous"). Indeed, Plaintiffs later suggest (at 35) that there may not have even been a riot after all: "whether or not a riot even occurs," incitement to a riot is still "unlawful."

Finally, Plaintiffs claim (at 9, 36) that *their* speech was suppressed and accuse Defendants of "fundamental[ly] misunderstanding" Supreme Court case law. Plaintiffs are apparently oblivious to the fact that *they* are the ones trying to use the power of the government (a federal court) to punish a speaker for speaking. In any event, Plaintiffs had no First Amendment right to disrupt a private speech. "[T]he fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please." *Wood v. Moss*, 134 S.Ct. 2056, 2066 (2014) (internal quotation marks omitted). The event was not an open forum run by the government as was the case in *Bible Believers*, 805 F.3d at 235 (internal quotation marks omitted) ("In public fora, the government's rights to limit expressive activity are sharply circumscribed."). Thus, Mr. Trump's call to remove protesters was not "unlawful" as Plaintiffs claim (at 10). Indeed, Plaintiffs later admit (at 17) that "some caselaw suggests that Defendants may even have been able to lawfully restrict dissenters from entering." But even if Plaintiffs had some right to protest the private event, *Defendants* could not violate those rights because Defendants are not government actors. *See* U.S. Const. amend. I ("*Congress* shall make no law . . . .") (emphasis added).

Plaintiffs' attempts to contort the First Amendment should be rejected. Mr. Trump's statement was not incitement and instead was fully protected by the First Amendment. For that reason alone, Plaintiffs' complaint should be dismissed with prejudice.

## II. PLAINTIFFS' NEGLIGENCE THEORIES MUST BE REJECTED.

### A. Plaintiffs' New Negligence Theory Runs Afoul Of The First Amendment.

For the first time in their opposition, Plaintiffs assert (at 14) that Mr. Trump could be liable for speaking and negligently causing Plaintiffs harm: "What Trump really *meant* by 'get 'em out of here' does not affect whether he should have known he was igniting a virtual powder keg with his directive." But the Supreme Court has consistently held that "negligence . . . is [a] constitutionally insufficient" standard for imposing liability for speech, *New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964), because "First Amendment freedoms need breathing space to survive," *NAACP v. Button*, 371 U.S. 415, 433 (1963). Holding speakers liable for negligently failing to foresee how listeners will perceive their words would chill a wide array of expression.

Accordingly, in *New York Times* the Court held that public figures alleging defamation must demonstrate that the speaker acted with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Id.* at 279–80 (1964). Negligence was not enough. *Id.* at 288. Similarly, in *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, the Court considered it "[o]f prime importance" that a person could not be subject to civil liability based on "[f]alse statement alone," absent proof that the speaker *knew* "that the representation was false" and "made the representation with the *intent* to mislead the listener." 538 U.S. 600, 620 (2003) (emphasis added). And in *United States v. Alvarez*, the Court invalidated a federal statute that prohibited falsely claiming military awards, concluding the First Amendment precluded punishing negligent speech. 132 S.Ct. 2537, 2545 (2012) (op. of Kennedy, J.); *id.* at 2552–53 (Breyer, J., concurring in the judgment). Because a speaker cannot be liable under a negligence standard, Plaintiffs' new negligence claim should be dismissed. *See Rogers v. United States*, 422 U.S. 35, 47 (1975) (Marshall, J., concurring) (citation omitted) ("In essence, the objective interpretation embodies a negligence standard, charging the defendant with

9

responsibility for the effect of his statements on his listeners. We have long been reluctant to infer that a negligence standard was intended in criminal statutes, we should be particularly wary of adopting such a standard for a statute that regulates pure speech.").

### B. Plaintiffs' Negligent-Security Claim Is Still Deficient.

Plaintiffs also assert (at 16) that Mr. Trump and the Campaign negligently failed to provide adequate security. But their claim must be dismissed because Plaintiffs still set forth no allegations as to what security was present or what security was required. Without any allegation as to what security *was* present or what security *should have been* present, Plaintiffs cannot allege inadequate security.

Plaintiffs' negligent-security claim also fails because Defendants owed Plaintiffs no duty. Plaintiffs assert (at 17) that Defendants owed a duty "to refrain from inviting an angry mob to attack a dissenting voice." If that was the duty, then no breach occurred because Mr. Trump never invited "an angry mob to attack." More importantly, however, "courts have held that, except under extraordinary circumstances, individuals are generally entitled to assume that third parties will not commit intentional criminal acts." *James v. Meow Media, Inc.*, 300 F.3d 683, 693 (6th Cir. 2002). And those "extraordinary circumstances" are generally limited to situations where there is a "special relationship" between the defendant and the plaintiff. *Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995) (requiring that the victim be in state custody in order to trigger governmental duty to protect her from third-party violence as a matter of Kentucky tort law). There was no special relationship here and Plaintiffs have not alleged one.

Another extraordinary circumstance is when a defendant's "affirmative actions create a high degree of risk of the third party's intentional misconduct." *James*, 300 F.3d at 695 (internal quotation marks omitted). But these "extremely limited circumstances" require the defendant to be "specifically aware of the peculiar tendency of a particular person to commit a criminal act."

10

*Id.* Plaintiffs have not alleged Defendants knew who Mr. Heimbach or Mr. Bamberger were, let alone that they were at the event, or that they might commit batteries. Plaintiffs thus cannot hold Mr. Trump or the Campaign responsible for the alleged criminal actions of third parties.

This conclusion is further supported by the fact that "[a] proprietor is not the insurer of the safety of its guests," meaning even if Mr. Trump and the Campaign were proprietors (and they were not), they still owed no duty. *Murphy v. Second St. Corp.*, 48 S.W.3d 571, 574 (Ky. Ct. App. 2001). Plaintiffs' citation to a contract between the Campaign and the Center is another attempt to amend their complaint. Regardless, "[i]t has long been the rule in Kentucky that no stranger to a contract may sue for its breach unless the contract was made for his benefit." *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F.Supp. 1371, 1376 (W.D. Ky. 1987). Plaintiffs have not argued they are third-party beneficiaries.

But even assuming Defendants owed a duty, that duty was only one of "ordinary care," as Plaintiffs admit (at 17). Here, that means Defendants would have owed a duty to try to prevent Plaintiffs' injuries if Defendants knew "of activities or conduct of other patrons or third persons which would lead a reasonably prudent person to believe or anticipate that injury to a patron might be caused." *Grisham v. Wal-Mart Stores, Inc.*, 929 F.Supp. 1054, 1058 (E.D. Ky. 1995), *aff'd* 89 F.3d 833 (6th Cir. 1996) (unpublished). In their complaint, however, Plaintiffs did not allege any knowledge on the part of Defendants. Plaintiffs now try to correct course (at 19) by first intimating connections between Mr. Trump and white supremacist groups. Those outrageous suggestions are unsupportable. And even if they were true (and they are not), Plaintiffs have drawn *no* connection between Mr. Trump and Mr. Heimbach or his particular organization.

Further, Plaintiffs' argument (at 20–24) that violence was foreseeable is wrong as a matter of law. In their complaint, Plaintiffs identified only one incident of supposed violence prior to Louisville. And "a single incident" is not "sufficient to establish foreseeability." *Grisham*, 929 F.Supp. at 1058. Plaintiffs attempt to cabin this rule (at 21) because it comes from "summary judgment" cases. But Plaintiffs cannot escape the fact that their allegation of a single event, even if true, does not show foreseeability. And again, their catalog (at 22–23) of alleged violence at other events is just an impermissible attempt to amend their complaint. *See Payne*, 2014 WL 3362247, at *4.

Plaintiffs attempt (at 24–25) to refute the fact that even if Mr. Trump's statement were taken as a call to harm protesters, his statement "Don't hurt them" severed any causal connection between the first statement and the alleged injury to Plaintiffs. Based on a case involving a golf ball that hit a passenger in a car, Plaintiffs claim (at 24) that only "independent force[s]" can "cut the chain of causation." *See Lexington Country Club v. Stevenson*, 390 S.W.2d 137, 141 (Ky. 1965). But *Lexington Country Club* says nothing about the situation where the allegedly negligent actor corrects the allegedly negligent act. Here, Mr. Trump cleared up any potential misunderstanding of his request to remove the protesters by quickly following up with the admonition "Don't hurt them." By doing so, he absolved himself of any potential liability for harm that came to Plaintiffs.

Finally, Plaintiffs argue (at 25–26) that assumption of the risk is inapplicable here. But Plaintiffs ignore the fact that their brief deeply undermines their argument. Their brief identifies (at 22–23) even more incidents that supposedly put Defendants on notice of potential violence. If these incidents put Defendants on notice, then they also put Plaintiffs on notice, especially considering Plaintiffs came with the express purpose of protesting.

## III. DEFENDANTS ARE NOT VICARIOUSLY LIABLE FOR THE ACTIONS OF AUDIENCE MEMBERS.

Plaintiffs argue (at 37–39) that Mr. Trump and the Campaign are vicariously liable for the actions of Messrs. Heimbach, Bamberger, and the "unknown defendant." But they still have not put forth any *facts* to support their claim of agency. *See Bird v. Delacruz*, 2005 WL 1625303, at *4 (S.D. Ohio July 6, 2005). They claim (at 37) that Mr. Trump "told people to do something. They did it." First, Mr. Trump did not tell anyone to harm anyone else. Second, Plaintiffs' complaint set forth no facts to show members of the audience were "subject to [Mr. Trump's] *control*." *Phelps v. Louisville Water Company*, 103 S.W.3d 46, 50 (Ky. 2003) (emphasis added). In fact, Plaintiffs' allegations prove Mr. Trump did *not* have control over the crowd because members of the crowd evidently hurt Plaintiffs despite Mr. Trump's admonition not to hurt anyone. *Compare* Compl. ¶ 34 *with id.* ¶ 97. Plaintiffs' only real argument on this score (at 37) is that Defendants' "primary authority" to show that control is the key element of agency "is a footnote from a thirty-year-old district court opinion from New York." Plaintiffs ignore the other authorities Defendants cited, including the Kentucky Supreme Court: *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51–52 (Ky. 2008); *CSX Transp., Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563, 567 (Ky. App. 1999); RESTATEMENT (THIRD) OF AGENCY.

Finally, Plaintiffs now assert (at 38) that there was "implied authority," but they still alleged no *facts* in their complaint to support such a theory. Plaintiffs say a formal relationship "is not required to hold a defendant accountable for ordering someone to do something unlawful." Again, there was nothing unlawful about Mr. Trump's statement (even if it were directed at members of the crowd). And even if members of the crowd were somehow Mr. Trump's agents, they were clearly acting outside the scope of any agency relationship because they committed intentional torts for their own purposes. *See Papa John's*, 244 S.W.3d at 56.

13

### IV.　PLAINTIFFS MISUNDERSTAND THE STANDARD OF REVIEW.

Plaintiffs claim that Defendants are really seeking summary judgment and are holding their complaint to too high of a standard. Both arguments are incorrect. Plaintiffs first assert (at 3) that the issue of "state of mind" cannot "be decided in a motion to *dismiss*." But courts routinely address state of mind at the motion-to-dismiss stage. *E.g., Iqbal*, 556 U.S. at 683. For example, in *Iqbal*, the Supreme Court, reviewing a decision on a motion to dismiss, held "respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind." *Id.*

So too here. Plaintiffs have not alleged any *facts* that plausibly suggest Mr. Trump intended to incite a riot. While at various points in their complaint, Plaintiffs state "Trump intended for his supporters to use unwanted, harmful physical force to remove protesters," that is not a factual allegation. Compl. ¶ 82. Those are elements "clad in nothing more than legal conclusions." *Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574, 585 (E.D. Mich. 2014).

Plaintiffs next claim (at 5) that the *Twombly/Iqbal* plausibility standard is not as demanding as Defendants make it out to be. They cite numerous newspaper and law review articles noting the effect of *Twombly/Iqbal*, but those commentaries do not change the standard. "To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, No. 15-1431, 2016 WL 3349206, at *3 (6th Cir. June 16, 2016) (emphasis added). Those facts must do more than "make it merely possible that the defendant is liable; they must make it plausible." *Id.* at *3 (emphasis added). And nothing Plaintiffs allege makes it plausible that Mr. Trump intended to instigate violence, that violence resulted because of Mr. Trump's statement, that there was not enough security, or that Mr. Trump is vicariously liable for the actions of audience members.

14

\*          \*          \*

Plaintiffs' claims should be dismissed. Plaintiffs' opposition does nothing to redeem their claims. Plaintiffs still ask this Court to infer an implausible criminal intent to a political speaker who asked for protesters to be removed from a private event. They now weave into that request an assertion that a speaker could be held liable for *negligently* inspiring violence. Such a standard was rightly rejected by the Supreme Court decades ago. Plaintiffs' only remotely cognizable claim is one for not-enough-security, but their complaint again fails them because it does not contain *facts* to support the claim.

The Court must not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. That is all the more true in a case like this: "trial courts are understandably wary of allowing unnecessary discovery where First Amendment values might be threatened." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001). Plaintiffs failed to suppress Mr. Trump's speech in Louisville. They should not be allowed now to tax his speech by requiring costly, time-consuming discovery that will only show what we already know: the statement was not a call to riot. For these reasons, the Court should dismiss the complaint with prejudice as to Mr. Trump and Donald J. Trump for President, Inc.

            Respectfully submitted,

             */s/ R. Kent Westberry*
            R. Kent Westberry
            LANDRUM & SHOUSE, LLP
            220 W. Main St., Ste. 1900
            Louisville, KY 40202-1395
            Ph: (502) 589-7616
            Fax: (502) 589-2119
            kwestberry@landrumshouse.com
            ***COUNSEL FOR DEFENDANT***
            ***Donald J. Trump for President, Inc.***
            ***and Donald J. Trump, Individually***

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served on the 28th day of July, 2016 via CM/ECF.

      I further certify that on the 28th day of July, 2016 I served a copy of the foregoing document on the following party of record by U.S. mail.

Matthew Warren Heimbach
222 Mable Street, Apt 2
Paoli, IN  47454
*Defendant*

                                               */s/ R. Kent Westberry*
                                               ***COUNSEL FOR DEFENDANT***
                                               ***Donald J. Trump for President, Inc.***
                                               ***and Donald J. Trump, Individually***