UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KASHIYA NWANGUMA, et al.,                                                         Plaintiffs,

v.                                                 Civil Action No. 3:16-cv-247-DJH

DONALD J. TRUMP, et al.,                                               Defendants.

\* \* \* \* \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Kashiya Nwanguma, Molly Shah, and Henry Brousseau attended a presidential campaign rally for Defendant Donald J. Trump with the intention of protesting. Plaintiffs allege that as they were protesting, Trump said, "Get 'em out of here," following which several members of the audience, including Defendants Matthew Heimbach and Alvin Bamberger, physically attacked them, forcing them to leave the rally. They allege assault and battery by Heimbach and Bamberger, as well as incitement to riot, vicarious liability, and negligence on the part of Trump and his campaign, Donald J. Trump for President, Inc. (the "Trump Defendants"). (Docket No. 1) The Trump Defendants have filed a motion to dismiss for failure to state a claim (D.N. 9), as has Bamberger (D.N. 10); Heimbach, proceeding pro se, has moved to strike certain allegations from the complaint (D.N. 11). At this early stage of the case, the Court finds most of Plaintiffs' claims to be sufficient. Accordingly, for the reasons discussed below, the Trump Defendants' and Bamberger's motions will be granted in part and denied in part, while Heimbach's motion will be denied.

# I. BACKGROUND

The following facts are set out in the complaint and must be accepted as true for purposes of the present motions. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 821 (6th Cir. 1953).

On March 1, 2016, Trump held a campaign rally at the Kentucky International Convention Center in Louisville, Kentucky. (D.N. 1-1, PageID # 10; *see id.*, PageID # 8) Nwanguma, Shah, and Brousseau each attended the rally for the purpose of "peacefully protesting Trump." (*Id.*, PageID # 11-13) As they were protesting, Trump said, "Get 'em out of here." (*Id.*, PageID # 10) Heimbach, Bamberger, and other audience members then physically attacked Plaintiffs. Nwanguma, who is African-American, was shoved first by Heimbach and then by Bamberger, who also struck her. (*Id.*, PageID # 12) Shah was likewise shoved by Heimbach and other audience members. (*Id.*, PageID # 13) Brousseau, a seventeen-year-old high school student, was punched in the stomach by an unknown defendant believed to be a member of the Traditionalist Worker Party, a white nationalist group Heimbach was representing at the rally. (*Id.*, PageID # 7-9, 12-14) Plaintiffs allege that as they were being attacked, Trump said, "Don't hurt 'em. If I say 'go get 'em,' I get in trouble with the press . . . ." (*Id.*, PageID # 10)

In a letter to the Korean War Veterans Association, whose uniform he wore at the rally, Bamberger described the incident as follows: "Trump kept saying 'get them out, get them out' and people in the crowd began pushing and shoving the protestors . . . I physically pushed a young woman down the aisle toward the exit . . . ." (D.N. 1-1, PageID # 15 ¶ 76 (first omission in original) (quoting letter to KWVA)) Heimbach acknowledged in a blog post that he had "help[ed] the crowd drive out one of the women" who were protesting. (*Id.*, PageID # 14 ¶ 70)

Videos recorded at the rally captured Heimbach and Bamberger's actions. (*Id.*, PageID # 11 ¶ 46)

Plaintiffs allege assault and battery by Heimbach, Bamberger, and the Unknown Defendant, and they seek to hold the Trump Defendants vicariously liable for those torts. (*Id.*, PageID # 18-21) In addition, Plaintiffs accuse the Trump Defendants of incitement to riot (*id.*, PageID # 19) and negligence, gross negligence, and recklessness (*id.*, PageID # 21-22). They seek compensatory and punitive damages. (*Id.*, PageID # 22)

## II. ANALYSIS

### A. Motions to Dismiss

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

#### 1. Trump Defendants

The Trump Defendants seek dismissal of Counts III, IV, and V of the complaint, which allege incitement, agency/vicarious liability, and negligence, gross negligence, and recklessness. (*See* D.N. 1-1, PageID # 19-22) The Court will address each claim in turn.

### a. Incitement to Riot

The Trump Defendants oppose Plaintiffs' incitement claim on several grounds. First, they assert that it is not plausible that Trump was addressing audience members or intended for violence to ensue when he gave the direction to remove protestors. (D.N. 9-1, PageID # 54-55) They further contend that this claim is deficient because Plaintiffs do not allege that a riot actually occurred. (*Id.*, PageID # 55-56) Finally, the Trump Defendants argue that Trump's statement ("get 'em out of here") is protected by the First Amendment. (*Id.*, PageID # 56-61) None of their contentions requires dismissal at this stage of the proceedings.

### i. Plausibility

According to the Trump Defendants, Plaintiffs' incitement claim is implausible because there is an "obvious alternative explanation" for the meaning of Trump's words, namely that he intended for professional security personnel to remove the protestors. (D.N. 9-1, PageID # 54 (quoting *Iqbal*, 556 U.S. at 682)) With this argument, the Trump Defendants effectively seek to impose a probability standard on Plaintiffs' complaint. (*See id.* (asserting that "'given [this] more likely explanation[n],' Plaintiffs' allegations 'do not plausibly establish' a claim for incitement" (alterations in original) (quoting *Iqbal*, 556 U.S. at 381))) The Sixth Circuit has rejected this approach, finding it to be inconsistent with *Twombly* and *Iqbal*. *See Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) ("*Twombly* insists that pleadings be plausible, not probable." (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556)). "Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Id.* Simply put, the plausibility of the Trump Defendants' explanation for Trump's statement "does not render all other [explanations] implausible." *Id.*

Plaintiffs allege numerous facts supporting an inference that Trump's order to "get 'em out of here" was directed at audience members. The complaint describes multiple occasions before and after the Louisville rally when Trump allegedly made comments endorsing or encouraging violence against protestors. (*See* D.N. 1-1, PageID # 16-17) And Bamberger's letter, quoted in the complaint, confirms that he and others "began pushing and shoving the protestors" upon Trump's order that the protestors be removed. (*Id.*, PageID # 15 ¶ 76) Moreover, after audience members took matters into their own hands, Trump allegedly stated, "Don't hurt 'em. If I say 'go get 'em,' I get in trouble with the press." (*Id.*, PageID # 10) Presumably, if he had intended for protestors to be escorted out by security personnel, Trump would have instructed the intervening audience members to stop what they were doing, rather than offering guidance on how to go about it. (*See* D.N. 1-1, PageID # 16 (alleging that Trump "watched as his supporters physically removed and accosted Plaintiffs at the Rally")) In sum, the Court finds that the Trump Defendants have not identified an "obvious alternative explanation" for Trump's statement warranting dismissal of the incitement claim. *Iqbal*, 556 U.S. at 662.

### ii.        Occurrence of a Riot

Next, the Trump Defendants assert that the incitement claim fails because it does not allege that there actually was a riot. (D.N. 9-1, PageID # 55-56) Plaintiffs bring their incitement claim pursuant to Ky. Rev. Stat. §§ 525.010 and 525.040. (D.N. 1-1, PageID # 19) The latter provides that "[a] person is guilty of inciting to riot when he incites or urges five (5) or more persons to create or engage in a riot."[1] § 525.040(1). "Riot" is defined as "a public disturbance

---

[1] A plaintiff may recover for injuries suffered as a result of a defendant's violation of a criminal statute pursuant to Ky. Rev. Stat. § 446.070. (*See* D.N. 1-1, PageID # 19 ¶ 105 (invoking § 446.070))

involving an assemblage of five (5) or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs law enforcement or other government function." § 525.010(5). The incitement statute does not require that a riot actually occur, nor do the Trump Defendants cite any case establishing such a requirement. Nevertheless, they argue that the complaint fails to allege that five or more persons were involved in Plaintiffs' mistreatment or that there was in fact "tumultuous and violent conduct" at the rally.[2] (D.N. 9-1, PageID # 56)

The word *incitement* is defined as "[t]he act or an instance of provoking, urging on, or stirring up," or, in criminal law, "[t]he act of persuading another person to commit a crime." *Black's Law Dictionary* (10th ed. 2014). Beyond this definition, *Black's* includes the following explanation:

> An inciter is one who counsels, commands or advises the commission of a crime. It will be observed that this definition is much the same as that of an accessory before the fact. What, then, is the difference between the two? It is that *in incitement the crime has not (or has not necessarily) been committed*, whereas a party cannot be an accessory in crime unless the crime has been committed. An accessory before the fact is party to consummated mischief; an inciter is guilty only of an inchoate crime.

*Id.* (emphasis added) (quoting Glanville Williams, *Criminal Law: The General Part* 612 (2d ed. 1961)). Thus, no riot need have occurred in order for Trump to be liable for inciting one.

In any event, the supposed flaws in Plaintiffs' claim are nonexistent. The complaint alleges that Trump directed "*his crowd of supporters* to 'get 'em out of here'" (D.N. 1-1, PageID # 10 (emphasis added)) and that Nwanguma was "violently assaulted by *numerous protestors*"

---

[2] The Trump Defendants also briefly assert that "Plaintiffs fail to allege that Mr. Trump intended for any tumultuous and violent conduct to occur." (D.N. 9-1, PageID # 56) Paragraph 104 of the complaint, however, alleges precisely that. (D.N. 1-1, PageID # 19) And Plaintiffs' allegations that Trump had previously condoned violence toward protestors provide the necessary factual support for Paragraph 104. (*See id.*, PageID # 16-17)

(*id.*, PageID # 11 (emphasis added)), of whom Heimbach and Bamberger were "[t]he most aggressive" (*id.*, PageID # 12). With respect to Shah, Plaintiffs allege that "[w]hen Trump told the audience to 'get 'em out of here,' Heimbach and his group [of four to six people] rushed in and began physically assaulting the protestors" (*id.*); "[a]s Shah continued to the back of the convention center, she was shoved and pushed by multiple Trump supporters." (*Id.*, PageID # 13) If this were not enough, Count III of Plaintiffs' complaint tracks the language of § 525.040(1), alleging that "[i]n directing his supporters to eject peaceful protestors using harmful physical force, Trump intended to create a public disturbance involving an assemblage of five or more persons which by tumultuous and violent conduct created grave danger of damage or injury." (D.N. 1-1, PageID # 19 ¶ 104) The Court therefore finds that Plaintiffs have adequately alleged incitement of five or more persons.

Likewise, to the extent an express allegation of tumult and violence is required, Paragraph 104 satisfies that requirement. (*See id.*; D.N. 9-1, PageID # 56 ("Nowhere in their Complaint do Plaintiffs allege there was 'tumultuous and violent' conduct or '*grave* danger.'")) The Court finds sufficient factual support for this allegation in the complaint: Plaintiffs—as well as Bamberger, in his letter—describe a chaotic and violent scene in which a crowd of people turned on three individuals, and those individuals were injured as a result. In short, Plaintiffs' incitement claim is adequately pled.

### iii. First Amendment

Lastly, the Trump Defendants maintain that they cannot be liable for incitement because Trump's statement ("get 'em out of here") was constitutionally protected speech. (D.N. 9-1, PageID # 56-61) "[W]hen a speaker incites a crowd to violence, his incitement does not receive constitutional protection." *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 245 (6th Cir. 2015)

(citing *Glasson v. City of Louisville*, 518 F.2d 899, 905 n.3 (6th Cir. 1975)). Under the test set forth in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), speech may not be "sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers*, 805 F.3d at 246 (footnote omitted) (citing *Brandenburg*, 395 U.S. at 447). In other words, "speech that fails to specifically advocate for listeners to take 'any action' cannot constitute incitement." *Id.* at 245 (quoting *Hess v. Indiana*, 414 U.S. 105, 109 (1973)); *see id.* at 246 n.11 ("*Brandenburg*'s plain language (reinforced by *Hess*) requires that the words must, at a minimum, implicitly encourage the use of force or lawlessness, or the undertaking of some violent 'act' . . . ."). Notwithstanding the Trump Defendants' insistence to the contrary, Plaintiffs have adequately alleged that Trump's statement meets these criteria.

First, it is plausible that Trump's direction to "get 'em out of here" advocated the use of force. Unlike the statements at issue in the cases cited by the Trump Defendants, "get 'em out of here" is stated in the imperative; it was an order, an instruction, a command. *Cf. NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982) ("If we catch any of you going in any of them racist stores, we're gonna break your damn neck."); *Hess*, 414 U.S. at 107 ("We'll take the fucking street again."); *Watts v. United States*, 394 U.S. 705, 705 (1969) ("If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."). Based on the allegations of the complaint, which the Court must accept as true, Trump's statement at least "implicitly encouraged the use of violence or lawless action." *Bible Believers*, 805 F.3d at 246.

Second, as discussed above, Plaintiffs allege that Trump intended for his statement to result in violence (D.N. 1-1, PageID # 15 ¶¶ 81-82, # 19 ¶¶ 104, 106), and they provide facts to

8

support that allegation. *See supra* Part II.A.1.a.i. Whether he actually intended for violence to occur is beyond the scope of the Court's inquiry at the motion-to-dismiss stage.

Third, the complaint adequately alleges that Trump's statement was likely to result in violence—most obviously, by alleging that violence actually occurred as a result of the statement. (*See, e.g.*, D.N. 1-1, PageID # 12 ¶ 56, # 15 ¶ 76) Further, Plaintiffs allege throughout the complaint that Trump knew or should have known that his statements would result in violence (*see, e.g.*, *id.*, PageID # 15-16 ¶ 82), and they describe a prior Trump rally at which a protestor was attacked. (*Id.*, PageID # 16 ¶ 85) The Court finds these allegations to be sufficient.

The Trump Defendants expend significant effort arguing that Trump's words did not call for "imminent lawless action" because Plaintiffs were trespassers and thus their removal could not have been unlawful. (*See* D.N. 9-1, PageID # 58-60; D.N. 23, PageID # 250-52) But the complaint does not establish that Plaintiffs were trespassers, as the Trump Defendants insist; to the contrary, it alleges that tickets and entry to the rally "were not denied to people simply because they had political views which differed from Trump and/or his supporters." (D.N. 1-1, PageID # 10) It thus does not establish that Plaintiffs "knew . . . that they were in a place they had no right to be" as soon as they began protesting. (D.N. 9-1, PageID # 59 (quoting *O'Leary v. Commonwealth*, 441 S.W.2d 150, 157 (Ky. 1969))) Unlike the appellants in *O'Leary*—student protestors convicted of breaching the peace after being "physically carried down the stairs and out of the building" by campus police for refusing to leave an area the dean had told them to vacate, 441 S.W.2d at 153—Plaintiffs did not "refus[e]" to leave before they were forcibly removed.[3] (D.N. 9-1, PageID # 59) Rather, according to the complaint, the violence began as

---

[3] The Court does not agree that *O'Leary* provides the applicable standard here in any event.

soon as Trump said "get 'em out of here." (*See, e.g.*, D.N. 1-1, PageID # 12 ¶ 56; *id.*, PageID # 15 ¶ 76) In sum, Plaintiffs have alleged a plausible claim of incitement to riot.

### b.  Vicarious Liability

Plaintiffs allege that Heimbach and Bamberger were acting as Trump's agents when the incident occurred.[4] (D.N. 1-1, PageID # 20) The Trump Defendants maintain that they cannot be held vicariously liable for Heimbach and Bamberger's actions. (D.N. 9-1, PageID # 61-64) With respect to this claim, the Court agrees that the complaint is deficient.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003) (quoting *CSX Transp., Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999)). No employment relationship is necessary to establish agency. *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). Nor does it matter whether the purported agent "volunteered his services." *Id.* (citing *Fournier v. Churchill Downs-Latonia, Inc.*, 166 S.W.2d 38, 40 (Ky. 1942)). Instead, under Kentucky law, "the most critical element in determining whether an agency relationship exists" is the alleged principal's "right to control" the agent's conduct. *Phelps*, 103 S.W.3d at 50 (quoting *CSX Transp.*, 14 S.W.3d at 566-67). Plaintiffs fail to allege that Trump had this right.

Count IV of the complaint asserts that the Trump Defendants "selectively targeted the protesters for physical violence because of the content of their speech" (D.N. 1-1, PageID # 20 ¶ 111); that Trump's "statements and comments during the Rally called for and sanctioned the physical abuse of Plaintiffs" (*id.* ¶ 113); that his "inducement and encouragement of Heimbach,

---

[4] In the alternative, Plaintiffs seek apportionment of fault to the Trump Defendants. (*See* D.N. 1-1, PageID # 20 ¶ 110) The Court makes no finding as to apportionment at this time.

Bamberger, and/or Unknown Defendant to remove Plaintiffs from the Rally by way of physical force was a substantial factor in causing Plaintiffs' injuries" (*id.* ¶ 114); and that he "knew or should have known" that his statement would result in Plaintiffs being physically assaulted.  (*Id.* ¶ 112; *see also id.*, PageID # 20-21 ¶ 115)  Nowhere in Count IV or elsewhere in the complaint do Plaintiffs allege that Trump or the campaign had the right to control the other defendants' actions.  Although allegations that audience members acted at Trump's direction suggest that he exercised some level of control over Bamberger and Heimbach (*see, e.g.*, *id.*, PageID # 15), it is not enough that "Trump told people to do something" and "[t]hey did it," as Plaintiffs assert.  (D.N. 16, PageID # 177)  Rather, a principal must have control over the manner in which the agent performs his duties.  *Nazar v. Branham*, 291 S.W.3d 599, 606-07 (Ky. 2009) ("An individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work." (citing *City of Winchester v. King*, 266 S.W.2d 343, 345 (Ky. 1954))); *cf. Brooks*, 289 S.W.3d at 212 (store employee's spouse who caused car accident with plaintiffs while running errand for store was not store's agent where "[a]part from supplying the money," store did not "exercise[] any control over how [he] performed the task").  Plaintiffs' conclusory assertions that "Heimbach, Bamberger, and Unknown Defendant were acting as agents" of the Trump defendants (*id.*, PageID # 20 ¶ 108) and that the campaign is vicariously liable for the actions of Trump and his agents (*id.* ¶ 109) are insufficient without supporting factual allegations.  *See Churchill Downs, Inc. v. NLR Entm't, LLC*, No. 3:14-CV-166-H, 2014 U.S. Dist. LEXIS 71672, at *8-*9 (W.D. Ky. May 27, 2014).  Count IV will therefore be dismissed.

### c. Negligence

Finally, the Trump Defendants contend that they cannot be liable for negligence because they had no duty to Plaintiffs; the security provided was adequate; there is no alleged causal connection between Trump's words and Plaintiffs' injuries; and Plaintiffs assumed the risk of injury.  (D.N. 9-1, PageID # 64-68)  In their reply, they further assert that to find Trump's statement negligent—which they characterize as a "new negligence theory" raised for the first time in Plaintiffs' response—would violate the First Amendment.  (D.N. 23, PageID # 253) None of these contentions has merit.

As an initial matter, the Court rejects the Trump Defendants' baseless assertion that Plaintiffs announced a "new negligence claim" in their response by indicating that Trump "could be liable for speaking and negligently causing Plaintiffs harm."  (D.N. 23, PageID # 253)  Count V of the complaint alleges:

> 121.    Trump and the Trump campaign knew or should have known that by encouraging members of the audience, including Heimbach, Bamberger, and/or Unknown Defendant, to "get [Plaintiffs] out of here," these individuals would physically attack the Plaintiffs.

> 122.    In particular, the directive to eject a Black woman, when several members of a group that Trump knew or should have known was a recognized hate group were present in the audience, was entirely reckless, or at least negligent/grossly negligent.

(D.N. 1-1, PageID # 21-22)  The assertion that Plaintiffs failed to allege "any knowledge on the part of Defendants" that Trump's audience might be predisposed to violence is similarly misguided in light of Paragraph 122.  (D.N. 23, PageID # 255)

Nor is the Court persuaded by the Trump Defendants' contention that the First Amendment precludes liability for negligence here.  (*See id.*, PageID # 253)  The cases they cite involved defamation or other false statements.  (*See id.* (citing *United States v. Alvarez*, 132 S.

12

Ct. 2537 (2012); *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)))  The sole exception is *Rogers v. United States*, 422 U.S. 35 (1975), in which the defendant was convicted of making threats against the president and Justice Marshall cautioned in a concurrence that the Court "should be particularly wary of adopting [a negligence] standard for a statute that regulates pure speech."  *Id.* at 47 (Marshall, J., concurring).  This is hardly a categorical rule.  The law is clear, however, that "[s]peech that falls within th[e] category of incitement is not entitled to First Amendment protection."  *James v. Meow Media, Inc.*, 300 F.3d 683, 698 (6th Cir. 2002) (considering negligence claims against producers of violent video games and movies).  And as explained above, Plaintiffs have adequately alleged that Trump's words amounted to incitement.  *See supra* Part II.A.1.a.  Their negligence claim thus presents no First Amendment concerns at this stage of the case.

The complaint also sufficiently alleges that the Trump Defendants had a duty to Plaintiffs.  Though the Trump Defendants are correct that "a proprietor is not the insurer of the safety of its guests," *Murphy v. Second St. Corp.*, 48 S.W.3d 571, 574 (Ky. Ct. App. 2001), this does not absolve them from liability.[5]  "In Kentucky, 'the rule is that every person owes a duty to

_____

[5] In a parenthetical, the Trump Defendants assert that they were not "proprietors."  (D.N. 9-1, PageID # 65)  They offer no explanation or authority for this contention.  While the term *proprietor* normally refers to "[a]n owner, esp[ecially] one who runs a business," *Black's Law Dictionary* (10th ed. 2014), it also means "[a] person who . . . has a (usually exclusive) right or title to [something's] use or disposal."  *Oxford English Dictionary* (3d ed. 2007); *see also Pirolo v. City of Clearwater*, 711 F.2d 1006, 1010 (11th Cir. 1983) ("*Black's Law Dictionary* defines a proprietor as: 'One who has the legal right or exclusive title to anything.  In many instances it is synonymous with owner.'" (quoting *Black's Law Dictionary* 1098 (rev. 5th ed. 1979))).  As the Trump Defendants had the right to use the convention center on the day of the rally, they may have borne the duty "to provide adequate security," as Plaintiffs allege.  (D.N. 1-1, PageID # 21 ¶ 117; *see id.* ¶ 120 (alleging that Trump Defendants were negligent or reckless in "relying on the crowd of Trump supporters to provide security"))  The Court need not resolve this issue at the motion-to-dismiss stage.

every other person to exercise ordinary care in his activity to prevent *foreseeable* injury.'"

*Waldon v. Housing Auth. of Paducah*, 854 S.W.2d 777, 779 (Ky. Ct. App. 1991) (quoting

*Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (1987)).

To establish foreseeability in the proprietor–patron context, a plaintiff must show

> (1) that the proprietor had knowledge that one of his patrons was about to injure
> the plaintiff and he failed to exercise ordinary care to prevent such injury; or[]
> (2) that the conduct of some of the persons present was such as would lead a
> reasonably prudent person to believe that they might injure other guests.

*Murphy*, 48 S.W.3d at 574 (citing *Sidebottom v. Aubrey*, 101 S.W.2d 212, 213 (Ky. 1937)).

"Even an intervening criminal act does not relieve one f[rom] liability for his or her negligent

acts or omissions, where the criminal act is a reasonably foreseeable consequence of the

defendant's negligent act." *Waldon*, 854 S.W.2d at 779 (citing *Wheeler v. Andrew Jergens Co.*,

696 S.W.2d 326 (Ky. 1985)); *see also* Restatement (Second) of Torts § 302B (1965) ("An act or

an omission may be negligent if the actor realizes or should realize that it involves an

unreasonable risk of harm to another through the conduct of the other or a third person which is

intended to cause harm, even though such conduct is criminal.").

    The cases cited by the Trump Defendants on this point are inapposite.  (*See* D.N. 9-1,

PageID # 65-66)  In *Grisham v. Wal-Mart Stores, Inc.*, 929 F. Supp. 1054 (E.D. Ky. 1996), the

plaintiffs sued Wal-Mart for negligence after they were robbed at gunpoint in the store's parking

lot and one plaintiff was shot in the hand and knee.  *Id.* at 1055-56.  The court concluded that a

single previous robbery within five miles of the store did not make the plaintiffs' robbery

foreseeable and that Wal-Mart thus did not have a duty to prevent it.[6]  *See id.* at 1058-59.

---

[6] Citing *Grisham*, the Trump Defendants assert: "Kentucky law is clear that 'neither a single incident nor sporadic incidents are sufficient to establish foreseeability.'"  (D.N. 9-1, PageID # 65 (quoting *Grisham*, 929 F. Supp. at 1058))  In fact, this purported rule is neither clear nor established in Kentucky.  The *Grisham* court's full statement was as follows: "Although no

Likewise, in *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270 (Ky. 1958), it was not foreseeable that a group of boys would start a fist fight with the plaintiffs at a drive-in movie theater after "smarting off," "bothering girls," and "looking for boys with leather jackets." *Id.* at 271; *see id.* at 272. As the *Napper* court noted, "what constitutes ordinary care or reasonable foreseeability varies with the particular circumstances." *Id.* at 271. Neither *Grisham* nor *Napper* involved a defendant alleged to have triggered the criminal act of a third party, as is the case here. *See* Restatement (Second) of Torts § 449 ("If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."); *see also Waldon*, 854 S.W.2d at 779 (noting that the Kentucky Supreme Court has adopted § 449). Under these circumstances, the number of prior incidents is of little significance.

Plaintiffs allege that Heimbach and others with him were wearing t-shirts that identified them as supporters of the Traditionalist Worker Party (D.N. 1-1, PageID # 12-13); that Trump knew or should have known that his audience included members of "a recognized hate group"; and that ordering the removal of an African-American woman was thus particularly reckless. (*Id.*, PageID # 21-22 ¶ 122; *see id.*, PageID # 7) They further allege that a protestor had been attacked at an earlier Trump rally. (*Id.*, PageID # 16 ¶ 85) In sum, the Court finds that Plaintiffs have adequately alleged that their harm was foreseeable and that the Trump Defendants had a duty to prevent it.

---

bright lines have been drawn regarding the number and frequency of criminal incidents that will give rise to a duty, case law from other jurisdictions indicates that neither a single incident nor sporadic incidents are sufficient to establish foreseeability." 929 F. Supp. at 1058 (citations omitted). The court cited cases from Nebraska, Texas, and North Carolina. *See id.*

The Trump Defendants also argue that Plaintiffs "fail to plausibly allege proximate cause." (D.N. 9-1, PageID # 67) However, the complaint alleges that Plaintiffs' injuries were "a direct and proximate result" of the Trump Defendants' actions (D.N. 1-1, PageID # 22 ¶ 22), and it contains ample facts supporting this allegation. (*See, e.g.*, *id.*, PageID # 12 ¶ 56 ("When Trump told the audience to "get 'em out of here,' Heimbach and his group rushed in and began physically assaulting the protestors."); *id.*, PageID # 15 ¶ 76 ("Trump kept saying 'get them out, get them out,' and people in the crowd began pushing and shoving the protestors . . . ." (quoting Bamberger letter to KWVA))) The contention that Trump's "statement could not have been the proximate cause of any violence" because the statement was "likely not directed at the crowd" is without merit; as explained above, Plaintiffs plausibly allege that Trump intended for audience members to act on his words. *See supra* Part II.A.1.a.i. And the Trump Defendants cite no authority for their assertion that any causal link was "severed" by Trump's later statement "Don't hurt 'em." (D.N. 9-1, PageID # 67)

The Court does not share the Trump Defendants' concern that the complaint lacks allegations as to the type or costs of security present or needed at the rally. (*See* D.N. 9-1, PageID # 64, 66-67; D.N. 23, PageID # 254) Plaintiffs' claim is that the Trump Defendants were negligent in relying on audience members to remove protestors rather than letting professional security personnel handle that task, not that security officers weren't present or sufficient in number. (*See* D.N. 1-1, PageID # 21 ¶ 120) This claim is further supported by Plaintiffs' allegation that no professionals intervened during the assault. (*See id.*, PageID # 11 ¶ 47)

Finally, the Court rejects the Trump Defendants' contention that Plaintiffs assumed the risk of injury by choosing to protest at the rally. (*See* D.N. 9-1, PageID # 68) The doctrine of assumption of the risk was abolished in Kentucky decades ago. *See Parker v. Redden*, 421

S.W.2d 586, 592 (Ky. 1967). To the extent Plaintiffs bear any fault for their injuries, that issue will be addressed through apportionment. *See* Ky. Rev. Stat. § 411.182; *see also Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 295 (Ky. 2015).

### 2. Alvin Bamberger

Like the Trump Defendants, Bamberger seeks dismissal of all claims asserted against him. (D.N. 10) Plaintiffs concede that neither Shah nor Brousseau alleges a cause of action against Bamberger. (D.N. 15, PageID # 126) However, they maintain that Nwanguma's claims of assault and battery are viable. The Court agrees.

Bamberger's challenge to the assault and battery claims rests on Plaintiffs' purported failure to allege that Nwanguma felt threatened by Bamberger or that she suffered any injury as a result of Bamberger striking and shoving her. (D.N. 10-1, PageID # 77) These arguments are meritless. Bamberger is correct that "the threat of unwanted touching" is an essential element of assault under Kentucky law. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 1999)). Plaintiffs allege this generally in Count II of the complaint, asserting that "[b]y attacking Plaintiffs, Defendants Heimbach, Bamberger, and Unknown Defendant[] intentionally, maliciously, wantonly and/or recklessly caused Plaintiffs to experience apprehension and fright of an immediate harmful and/or offensive contact." (D.N. 1-1, PageID # 18-19) More importantly, they provide facts to support this allegation, stating that Bamberger and Heimbach were "[t]he most aggressive of those who assaulted Nwanguma" (D.N. 1-1, PageID # 12); that Bamberger "aggressively mov[ed] Nwanguma through the crowd by shoving her and striking her" (*id.*); and that "Bamberger shoved Nwanguma, and continued to shove her repeatedly while she was exiting the Rally." (*Id.*, PageID # 14) Under the facts alleged, it is reasonable to infer that Bamberger caused

Nwanguma to fear an "unwanted touching." *Banks*, 39 S.W.3d at 480; *see Iqbal*, 556 U.S. at 678.

The Court is similarly unpersuaded by Bamberger's contention that Nwanguma has failed to allege any injury. Again, although the complaint alleges generally that "Plaintiffs suffered injuries" as a result of the assault and battery by Bamberger and Heimbach (D.N. 1-1, PageID # 18-19), it states that Plaintiffs seek "compensatory damages . . . against all Defendants for physical injuries, emotional distress, humiliation, and mental anguish" (*id.*, PageID # 22), and the allegations that Nwanguma was repeatedly shoved and struck by Bamberger support this demand. Even if Nwanguma were only entitled to nominal damages (as Bamberger maintains), her claim would not be barred for failure to allege such damages in the complaint. *See Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*, 554 F. App'x 176, 190 (4th Cir. 2014) ("Nominal damages need not be specifically pleaded where a party alleges a claim for general damages; the general damage allegation sufficiently encompasses nominal damages." (citing *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992)).

Finally, Bamberger argues that Count VI of the complaint, which asserts a claim for punitive damages, must be dismissed because no cause of action for punitive damages exists. (D.N. 10-1, PageID # 76). Bamberger is correct that "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (citation omitted). Thus, the Court will grant his motion as to Count VI. This dismissal will not preclude Plaintiffs from recovering punitive damages, however. *See Hume v. Quickaway Transp. Inc.*, No. 3:16-cv-00078-JHM, 2016 U.S. Dist. LEXIS 77831, at *37 (W.D. Ky. 2016) (dismissing punitive-damages claim to

extent it was asserted as separate cause of action but leaving award of punitive damages "for future determination").

### B. Motion to Strike

Unlike his codefendants, Heimbach does not seek dismissal of any claims; instead, he moves to strike certain portions of the complaint. (D.N. 11) Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the rule permits motions to strike, *see id.*, such motions "are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted). The Sixth Circuit instructs that a pleading should be stricken "'only when required for the purposes of justice' and only when 'the pleading to be stricken has no possible relation to the controversy.'" *Vanden Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 752 (W.D. Ky. 2014) (quoting *Brown & Williamson*, 201 F.2d at 822). Thus, "motions to strike are 'typically denied unless the allegations at issue do not relate to the subject matter of the action and may cause significant prejudice to one or more of the parties.'" *Id.* (quoting *New Day Farms, LLC v. Bd. of Trs. of York Twp.*, No. 2:08-cv-1107, 2009 U.S. Dist. LEXIS 130429, at *9 (S.D. Ohio June 10, 2009)). The purpose of a motion to strike is to "'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs*, 783 F.3d at 1050 (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). Heimbach's motion does not serve this purpose.

"An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from

the dignity of the court." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015) (internal quotation marks and citation omitted). Heimbach attacks thirteen segments of the complaint as being impertinent, immaterial, or scandalous. (D.N. 11)  The first two, a quote from Ronald Reagan and an introductory paragraph asserting that Trump broke with American political tradition by "by inciting his supporters to physically attack protestors at his rallies and campaign appearances," are challenged by Heimbach as "rhetorical flourish."  (*Id.*, PageID # 86 (quoting D.N. 1-1, PageID # 6))  While these parts of the complaint may not be essential, they are neither unrelated to the case nor prejudicial to Heimbach.  *See Vanden Bosch*, 13 F. Supp. 3d at 752.  Rule 12(f) is not a means for the Court to edit Plaintiffs' complaint, and the Court declines to do so.  *Cf. Saylavee LLC v. Hockler*, 228 F.R.D. 425, 426 (D. Conn. 2005) ("Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates.").

The Court also declines to strike the paragraphs discussing Heimbach's association with a white nationalist group and statements Heimbach has made about how Trump may further the interests of that group.  (*See* D.N. 1-1 ¶¶ 4-8, 54, 67, 72)  These paragraphs provide context for the alleged attacks on Nwanguma and the other plaintiffs by illustrating Heimbach's antipathy toward non-whites and persons who oppose Trump.  *See, e.g.*, *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (reversing grant of motion to strike where stricken material "provide[d] important context and background to [the plaintiff's] suit"); *see also, e.g.*, *Jones v. Heritage-Crystal Clean, LLC*, No. 8:16-cv-623-T-33JSS, 2016 U.S. Dist. LEXIS 99490, at *7 (M.D. Fla. July 29, 2016) (declining to strike allegations that "provide[d] helpful context and background information").  For the same reason, the allegations support Plaintiffs' claim for

punitive damages.  *See* Ky. Rev. Stat. § 411.184(2) (providing for punitive damages where plaintiff can prove that defendant "acted toward the plaintiff with oppression, fraud or malice"); Wright & Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2017) (courts need not strike allegations that may be relevant to punitive-damages claims).  They may also support Plaintiffs' negligence and incitement claims by suggesting that the Trump Defendants should have been aware that the audience included white nationalists.  *See supra* Parts II.A.1.a, c.  Because the allegations relate to Plaintiffs' claims, they will not be stricken.  *See Vanden Bosch*, 13 F. Supp. 3d at 752.

Nor does the Court find Paragraphs 40 and 41—which describe racial, ethnic, and sexist slurs Nwanguma allegedly heard at the rally—to be impertinent, immaterial, or scandalous, as Heimbach contends.  (D.N. 11, PageID # 91-92; *see* D.N. 1-1, PageID # 11)  While the words themselves are repulsive, they are relevant to show the atmosphere in which the alleged events occurred.  *See Stanbury Law Firm*, 221 F.3d at 1063.  Moreover, these allegations pose no prejudice to Heimbach, who is not mentioned in either paragraph.

Finally, Plaintiffs' allegation in Paragraph 83 that they filed police reports concerning the alleged attacks is related to the controversy and does not prejudice Heimbach in any way.  *See Vanden Bosch*, 13 F. Supp. 3d at 752.  It therefore will not be stricken.

## III.  CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The motion to dismiss by Defendants Donald J. Trump and Donald J. Trump for President, Inc. (D.N. 9) is **GRANTED** as to Count IV of the complaint.  The Trump Defendants' motion is **DENIED** as to Counts III and V.

(2)     Defendant Alvin Bamberger's motion to dismiss (D.N. 10) is **GRANTED** with respect to Count VI of the complaint and any claims by Shah or Brousseau against Bamberger. Bamberger's motion is **DENIED** in all other respects.

(3)     Defendant Matthew Heimbach's motion to strike (D.N. 11) is **DENIED**.

(4)     Plaintiffs' motion for a hearing to address whether Defendant Trump should be deposed prior to his inauguration as President (D.N. 24) is **DENIED** as moot.

(5)     Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to Magistrate Judge H. Brent Brennenstuhl for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all nondispositive matters, including discovery issues.  Judge Brennenstuhl is further authorized to conduct one or more settlement conferences in this matter.

March 31, 2017

**David J. Hale, Judge**
**United States District Court**