UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KASHIYA NWANGUMA, *et al.*,     )
     )
     )
     *Plaintiffs*,     )
     )     **Case No. 3:16-cv-247**
**v.**     )     **Judge David J. Hale**
     )     **Magistrate Judge H. Brent Brennenstuhl**
**DONALD J. TRUMP, PRESIDENT**     )
**OF THE UNITED STATES,** *et al.*,     )
     )
     )
     *Defendants*.     )

*Filed Electronically*

<u>**DEFENDANTS DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, AND
DONALD J. TRUMP FOR PRESIDENT, INC.'S MEMORANDUM IN SUPPORT OF
THEIR MOTION UNDER 28 U.S.C. § 1292(b) TO CERTIFY THIS COURT'S ORDER
FOR INTERLOCUTORY APPEAL AND STAY PROCEEDINGS
OR, IN THE ALTERNATIVE, RECONSIDERATION**</u>

In this case, the Plaintiffs have asserted claims against Defendants Donald J. Trump and

his presidential campaign, Donald J. Trump for President, Inc. (together, "the Trump

Defendants"), for allegedly inciting a riot and otherwise engaging in negligent speech that

allegedly caused the Plaintiffs to be assaulted by members of the audience at a Trump campaign

rally. The Trump Defendants filed a motion to dismiss arguing, among other things, that Plaintiffs'

claims are barred by the First Amendment as a matter of law. (ECF No. 9).

In particular, the Trump Defendants argued that Mr. Trump's campaign speech was fully

protected under the First Amendment for two basic reasons. First, Mr. Trump's statements could

not be stripped of First Amendment protection under a theory of "incitement" because he did not

"explicitly or implicitly encourage[] the use of violence or lawless action," but rather explicitly

*discouraged* the crowd from harming the protestors. *Bible Believers v. Wayne Cty*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc), *cert. denied*, 136 S. Ct. 2013 (2016). And second, given the stringent incitement standard required by the First Amendment, a political candidate cannot be subject to tort liability for "negligently" speaking at a campaign rally. On March 31, 2017, this Court denied the motion to dismiss, rejecting the Trump Defendants' threshold First Amendment defenses. *See* Memorandum Opinion and Order. (ECF No. 27) ("Op.").

The Trump Defendants now move under 28 U.S.C. § 1292(b) for the Court to certify an interlocutory appeal on the following two controlling issues of law:

(1) Whether the First Amendment protects Mr. Trump's campaign speech as a matter of law, or whether the speech falls within the narrow category of expression that can be subject to censorship for "inciting a riot"

(2) Whether the First Amendment precludes holding a speaker liable for negligently causing others to engage in violence.

In the alternative, the Trump Defendants request this Court reconsider its order and grant the Trump Defendants' Motion to Dismiss in its entirety.

## ARGUMENT

District courts have authority to certify an interlocutory appeal under 28 U.S.C. § 1292(b). When a district court certifies an interlocutory appeal, it gives the court of appeals the option to take the case to resolve important legal issues that may end the case or significantly narrow the scope of litigation, thus making the process of discovery and trial more efficient. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995). The court should certify an interlocutory appeal when: "(1) a controlling legal question is involved; (2) there is substantial ground for difference of opinion regarding it; and (3) an immediate appeal would materially advance the litigation's ultimate termination." *Rafoth v. Nat'l Union Fire Ins. Co. (In re Baker & Getty Fin. Servs., Inc.)*,

954 F.2d 1169, 1172 (6th Cir. 1992). "The three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal." 16 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3930 (3d ed.).

Each of these three factors is satisfied here, and indeed it is scarcely possible to imagine a case where interlocutory review would be more appropriate than this one. The legal issues at stake are "controlling" because if the Sixth Circuit determines that the First Amendment protects Mr. Trump's speech as a matter of law, that will end one or both of Plaintiffs' remaining claims against the Trump Defendants. There is at least a substantial question whether the Trump Defendants will prevail, as speech at a political campaign rally is at the very core of First Amendment protection, and "[i]t is not an easy task to find that speech rises to such a dangerous level that it can be deemed incitement to riot." *Bible Believers*, 805 F.3d at 244. Indeed, no court until now has ever held that a speaker can be held liable for "inciting a riot" where he makes no mention of unlawful violence and expressly instructs the crowd *not* to engage in harmful activity. Nor has any court ever suggested that plaintiffs can circumvent the stringent "incitement" test by relying on a mere negligence standard, thereby dispensing with all of the crucial elements that keep the category of incitement narrowly confined to speech that *intentionally* encourages unlawful violence. There is every reason to give the Sixth Circuit a chance to weigh in on these vital First Amendment issues now, rather than waiting until *after* an enormously costly, contentious, and burdensome litigation process involving the sitting President of the United States.

I.    WHETHER MR. TRUMP'S STATEMENT IS PROTECTED BY THE FIRST AMENDMENT AND WHETHER A SPEAKER CAN BE LIABLE FOR NEGLIGENCE ARE CONTROLLING LEGAL QUESTIONS

Both of the First Amendment questions presented here easily qualify as controlling questions of law because they are purely legal issues that could resolve one or both of the

remaining claims against the Trump Defendants. As a general rule, when a defendant asserts a threshold First Amendment defense, "[t]he inquiry into the protected status of [the defendant's] speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 13 (1970) (holding speech non-actionable "as a matter of constitutional law"); *Kiessel v. Oltersdorf*, 459 F. App'x 510, 513 (6th Cir. 2012) ("Whether [the] speech . . . qualifies for First Amendment protection[] is a legal question."). Moreover, interlocutory review is especially appropriate on a controlling First Amendment issue because wrongly subjecting a speaker to the burdens of discovery and trial infringes upon his free-speech rights even if he ultimately prevails. Indeed, many courts have recognized the "significant risk" that allowing "even a non-meritorious" claim to go forward "may stifle" protected speech. *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 50 (D.C. 1983). For this reason, courts have frequently certified First Amendment issues for interlocutory appeal. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 521 (2001); *Herbert v. Lando*, 441 U.S. 153, 157–58 (1979). Needless to say, avoiding the burden and distraction of unnecessary discovery is particularly important when a defendant is the sitting President of the United States. *Clinton v. Jones*, 520 U.S. 681, 694 n.19 (1997).

Here, both of the threshold First Amendment defenses asserted by the Trump Defendants present clean legal questions that are well suited for appellate review. *First*, it is a well established legal principle that a statement cannot rise to the level of incitement unless it "explicitly or implicitly encourage[s] the use of violence or lawless action." *Bible Believers*, 805 F.3d at 246. In *Bible Believers*, the Sixth Circuit held as a matter of law that the defendants' speech "was not incitement to riot . . . because they did not utter a single word that can be perceived as encouraging violence or lawlessness." *Id*. Similarly, the Trump Defendants contend that, as a matter of law, Mr. Trump's statements cannot be "incitement" because he did not make any mention of violence

or lawless action. This speech is even more protected because Mr. Trump expressly *discouraged* the crowd from causing any harm to the Plaintiffs. Just as in *Bible Believers*, this argument presents a pure legal question. Indeed, since the Supreme Court laid out the constitutionally required test for incitement in *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam), the Court has repeatedly decided for *itself* whether statements meet that test.  *See id.* at 446 n.1; *Hess v. Indiana*, 414 U.S. 105, 107 (1973) (per curiam); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982). This accords with well-established precedent holding that, in drawing "the line between speech unconditionally guaranteed and speech [that] may legitimately be regulated," courts "examine for [them]selves the statements in issue and the circumstances under which they were made."  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508 (1984) (citation omitted).

*Second*, it likewise presents a pure legal question whether the First Amendment allows a speaker at a political rally to be held liable for "negligently," but unintentionally, uttering words that allegedly inspire audience members to engage in unlawful violence. The Trump Defendants contend that adopting a negligence standard is erroneous as a matter of law because it eviscerates the First Amendment rule that "incitement" liability can be imposed only where "the speaker *intends* that his speech will result in the use of violence or lawless action." *Bible Believers*, 805 F.3d at 246 (emphasis added). Obviously, the correct legal standard to be applied under the First Amendment is a quintessential question of law. As the Supreme Court has repeatedly emphasized, courts have an independent legal duty to "confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited." *Bose*, 466 U.S. at 505.

It is equally clear that both of the legal questions presented here qualify as "controlling" because, if the Trump Defendants prevail, one or both of the Plaintiffs' remaining claims would

have to be dismissed. As the Sixth Circuit has explained, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Rafoth*, 954 F.2d at 1172 n.8. "[T]he resolution of an issue need not necessarily terminate an action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds*, 937 F.2d 44 (1991). Rather, the "controlling" element is satisfied "if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 Wright & Miller, *Fed. Prac. & Proc.* § 3930, at 426 (3d ed. 1996).

If the Sixth Circuit were to dismiss Plaintiffs' incitement and/or negligence claims in an interlocutory appeal, it would save both the parties and the court an enormous amount of "time and expense." Most obviously, if both claims were dismissed, then the Trump Defendants would be entirely out of the case. If the incitement claim were dismissed, then there would be no need for discovery or trial on the "intent" behind Mr. Trump's statements, or whether "the imminent use of violence or lawless action [was] the likely result of his speech." *Bible Believers*, 805 F.3d at 246. And if the negligence claim were dismissed, there would be no need for discovery or trial on the issue of whether Mr. Trump exercised reasonable care in making his remarks.

In addition to the important First Amendment interests at stake, the need for interlocutory review is particularly pronounced here because the ordinary burdens of litigation will be magnified dramatically due to the prospect of discovery and trial involving a sitting President. "The high respect that is owed to the office of the Chief Executive … is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton*, 520 U.S. at 707. As the Court explained in *Clinton*, before permitting discovery to go forward against a sitting President, legal issues in the case "merit [an appellate court's] respectful and deliberate consideration." *Id.* at 690.

While the Court in *Clinton* did not recognize a temporary immunity for the President from civil suit, it strongly cautioned that "the public interest demands that [the President] devote his undivided time and attention to his public duties." *Id.* at 697. "[B]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits . . . raise[s] unique risks to the effective functioning of government." *Id.* at 694 n.19 (citation omitted). These concerns are directly analogous to those that justify governmental immunity, the denial of which is immediately appealable under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also District of Columbia v. Pizzulli*, 917 A.2d 620, 624 (D.C. 2007) ("[A]n order denying a claim of immunity from suit under the First Amendment satisfies the collateral order doctrine and is thus immediately appealable."). Indeed, *Clinton* explicitly recognized that "the potential burdens on the President" "are appropriate matters for the District Court to evaluate in its management of the case." 520 U.S. at 707. And that includes sending the case to the appeals court to decide threshold legal issues. *Id.* at 707 n.41. Because of the impact this case may have on the public interest, the court of appeals should have the chance to test the legal viability of the Plaintiffs' unprecedented claims at the threshold, before subjecting the President to "unique" and extraordinary burdens of litigation.

## II.   THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION REGARDING THE COURT'S RESOLUTION OF THE CONTROLLING FIRST AMENDMENT ISSUES

There is a substantial ground for difference of opinion as to whether Mr. Trump's speech was protected by the First Amendment as a matter of law.

1.   At the threshold, the forum for this speech was a political campaign rally. Like any other private assembly to achieve ideological goals, political campaigns have a core First Amendment right to associate for the purpose of expressing a particular message, which

necessarily includes the right to "exclu[de] . . . views [that] [a]re at odds with positions [the campaign] espouse[s]." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 580 (1995). Accordingly, when a campaign has "decided to exclude a message it d[oes] not like" from a campaign rally, "that is enough to invoke [the campaign's] right as a private speaker to shape its expression" by excluding or expelling demonstrators who express contrary viewpoints. *Id*. at 574. Of course, protestors have their own First Amendment right to express dissenting views, but they have no right to do so as part of the campaign rally of the political candidates they oppose. Indeed, forcing the "private organizers" of a political rally to accept everyone "who wish[es] to join in with some expressive demonstration of their own" would "violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id*. at 573.

Here, the Plaintiffs obviously interfered with the Trump campaign's First Amendment right to "choose the contents of [its] own message," *id.*, when they attended a Trump campaign rally and began vigorously expressing their disdain for Mr. Trump, including by "h[o]ld[ing] up a sign depicting [Mr.] Trump's face on the body of a pig," Compl. ¶ 44. Once that disruption occurred, Mr. Trump and the campaign had every right to expel the protestors from the event. Accordingly, Mr. Trump was not "inciting a riot" but was rather exercising a core First Amendment freedom when he said, "[G]et 'em out of here" and "Don't hurt 'em." *Id*. ¶¶ 32, 34. By holding to the contrary, this Court's decision effectively transforms Mr. Trump's protected political speech into an unlawful tortious act. At the very least, reasonable minds can differ as to whether that holding is correct as a matter of First Amendment law.

2.      In any event, Mr. Trump's speech would be fully protected even in a non-political forum, such as a wedding or other social gathering, because a call to exclude intruders cannot, as

a matter of law, be constitutionally punished if it is not directed at encouraging imminent unlawful violence. To be sure, "incitement does not receive constitutional protection," but it is equally true that the unprotected category of incitement is narrowly limited to speech that "explicitly or implicitly encourage[s] the use of violence or lawless action." *Bible Believers*, 805 F.3d at 245-46. Here, Mr. Trump's statements were completely devoid of any explicit encouragement of unlawful violence and explicitly *discouraged* such violence by telling the audience, "Don't hurt 'em." Compl. ¶ 34. Even if the phrase "Get 'em out of here" could be plausibly interpreted *in isolation* to encourage some use of force, it is manifestly implausible to interpret the phrase that way in the present context, where it was directly followed by the words, "*Don't* hurt them." It is not remotely plausible that saying "Don't hurt them" somehow implicitly encouraged audience members to hurt anyone.

As a matter of law, a directive to expel intruders in a way that does *not* "hurt" them cannot somehow be converted into a directive to expel them in a way that *does* "hurt" them. On this point, this Court's analysis was limited to a single paragraph, which consists of nothing more than the observation that Mr. Trump's statements were "stated in the imperative" as "an order, an instruction, a command." Op. at 8. But of course, there are many orders, instructions, and commands that are perfectly lawful—including the command to expel protestors who are interfering with the expressive association rights of a political campaign rally. Accordingly, the question is not whether Mr. Trump gave an instruction, but whether he instructed the audience to engage in *unlawful violence*.

On this issue, the Court concluded that "it is plausible that Trump's direction to 'get 'em out of here' advocated the *use of force*." Op. at 8 (emphasis added). But of course, Mr. Trump said nothing whatsoever about the use of force. And even if he did, that would not settle the matter

because, under the First Amendment, state law "cannot 'proscribe advocacy of the use of force . .

. *except where such advocacy is directed to inciting or producing imminent lawless action.*'" *Bible*

*Believers*, 805 F.3d at 244 (quoting *Brandenburg*, 395 U.S. at 447, 89 S.Ct. 1827) (emphasis

added). As noted, Mr. Trump obviously had a First Amendment right to exclude the Plaintiffs from

his campaign rally, and it is a bedrock principle of law that "the right to exclude another . . .

includes the right to use reasonable force." *Feld v. Feld*, 688 F.3d 779, 783 (D.C. Cir. 2012). That

is true even if the protestors initially purchased tickets and entered the rally in a peaceful manner,

because "a refusal to leave the property, though lawfully and peacefully entered in the first

instance, invites the owner to eject the intruder by force." *O'Leary v. Commw.*, 441 S.W.2d 150,

157 (Ky. 1969). Under Kentucky law, as in virtually every state, it is entirely lawful to "use that

degree of force" that is "reasonably necessary under the circumstances to eject an unwelcome

trespasser." *McCoy v. Taylor Tire Co.*, 254 S.W.2d 923, 924 (Ky. 1953). Thus, even if Mr. Trump

implicitly instructed the audience to remove the protestors by using force if necessary, his speech

was still entirely lawful and protected under the First Amendment unless he advocated *a greater*

*degree of force than was necessary under the circumstances*. Absent that type of unlawful

advocacy, Mr. Trump cannot be held liable for incitement. It makes no difference whether the

crowd *reacted* with unlawful violence beyond what Mr. Trump advocated, because "[t]he hostile

reaction of a crowd does not transform protected speech into incitement." *Bible Believers*, 805

F.3d at 246.

    Moreover, the question is not whether the challenged speech could "plausibly" be

interpreted by a jury to encourage violence, but rather whether the speech unambiguously did so.

In policing "the line between speech unconditionally guaranteed and speech which may

legitimately be regulated," courts have an independent duty to "examine for [them]selves the

statements in issue and the circumstances under which they were made," in order to determine whether First Amendment protection applies. *Bose*, 466 U.S. at 508 (citations omitted). "Providing triers of fact with a general description of the type of communication whose content is unworthy of protection has not, in and of itself, served sufficiently to narrow the category, nor served to eliminate the danger that decisions by triers of fact may inhibit [free] expression." *Id.* at 505.

To the extent there is any doubt about whether Mr. Trump was inciting unlawful violence or exercising his lawful First Amendment right to exclude protestors from his campaign rally, "[t]he First Amendment requires [courts] to err on the side of protecting political speech." *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 457 (2007). "[I]f the freedoms of expression are to have the 'breathing space' that they 'need  to survive,'" then facially lawful statements made by political candidates at campaign rallies cannot be converted into "implicit" acts of incitement and subjected to the punitive burdens of litigation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964) (quoting *NAACP v. Button*, 371 U. S. 415, 433 (1963)).

3.      Finally, there is, at the very least, a substantial question concerning the Court's holding that, even if Mr. Trump's campaign speech did not rise to the level of intentional incitement, he can nonetheless be held liable for engaging in speech that "negligently" inspired audience members to engage in unlawful violence. This holding eviscerates the rule established by the Supreme Court in *Brandenburg*, which unequivocally holds that speech is fully protected under the First Amendment unless the speaker has *intentionally* encouraged unlawful violence. *Brandenburg*, 395 U.S. at 447; *Bible Believers*, 805 F.3d at 246. If Mr. Trump can be held liable for allegedly inspiring audience members to engage in violence under a mere *negligence* standard without any showing of intentional incitement, then *Brandenburg* is a dead letter.

This Court opined that because "Plaintiffs have adequately alleged that [Mr.] Trump's words amounted to incitement," "[t]heir negligence claim . . . presents no First Amendment concerns at this stage of the case." Op. at 13. But respectfully, that is incorrect. Because negligence involves a different *scienter* element, it would allow a jury to hold Mr. Trump liable under an erroneous legal standard based on speech that is fully protected under *Brandenburg*. That prospect presents a very serious First Amendment concern.

In short, there is at least room for reasonable disagreement as to whether this Court's First Amendment analysis was correct, or whether the Sixth Circuit might provide some helpful clarification on the controlling First Amendments issues before discovery and trial. Given the extraordinary stakes, the Sixth Circuit should at least be given the opportunity to decide whether it wants to review these controlling legal questions before the sitting President is subject to discovery and before potentially protected speech is subject to the burdens of litigation.

## III.   INTERLOCUTORY APPEAL WOULD ADVANCE THE ULTIMATE CONCLUSION OF THIS CASE

The final requirement for certification is a showing that an immediate appeal "may materially advance the ultimate termination of the litigation." § 1292(b).  This requirement is "closely tied to the requirement that the order involve a controlling question of law."  16 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3930.  "It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation."  *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).  Where a reversal on appeal would resolve certain claims in the case in their entirety, even though it would not resolve the entire case, "[t]hat is sufficient to advance materially the litigation." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

The resolution of these First Amendment issues would substantially shorten this litigation. If the Trump Defendants prevail on appeal then one or both remaining claims against them will be dismissed. But even if the Trump Defendants lose, the appellate court's clarification will provide information to the parties about the relative strength of their legal positions.  "[U]ncertainty about the status" of Plaintiffs' claims, by contrast "may delay settlement . . . and by doing so further protract the litigation.  That is enough" to satisfy this final requirement for certification.  *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536-537 (7th Cir. 2012).

## IV.   IN THE ALTERNATIVE, THIS COURT SHOULD RECONSIDER ITS ORDER DENYING, IN PART, THE MOTION TO DISMISS

The foregoing reasons also support this Court's reconsideration of the First Amendment issues in this case. A court may grant a motion to reconsider "if there is a clear error of law." *GenCorp v. Am. Int'l*, 178 F .3d 804, 834 (6th Cir. 1999). With respect, the Trump Defendants maintain the Court committed three distinct legal errors in its opinion. First, the Court failed to consider the free association implications of this case. The event in question was a political rally, where the right to exclude is paramount. Second, the Court failed to recognize that Mr. Trump's speech cannot, as a matter of law, be construed to incite imminent lawless action, particularly since the speech must be unambiguously, not just plausibly, unprotected. And third, the Court erred in permitting a negligent incitement claim to go forward in contradiction to *Brandenburg*'s clear command that intent is a requisite element for incitement claims.

As the Supreme Court has instructed, cases against the President must be "properly managed by the District Court" to avoid "impos[ing] an unacceptable burden on the President's time and energy, and thereby impair the effective performance of his office." *Clinton*, 520 at 702.

By reconsidering its order, this Court can properly resolve the constitutional questions in this case, and ensure the danger recognized in *Clinton* does not become a reality.

### CONCLUSION

The Court should stay further proceedings and certify an interlocutory appeal on the two controlling legal questions identified above.  In the alternative, the Court should reconsider its order and grant the Trump Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

JONES DAY

Michael Carvin (*pro hac motion pending*)
Anthony Dick (*pro hac motion pending*)
Andrew Bentz (*pro hac motion pending*)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Tel: (202) 879-7643
Fax: (202) 626-1700
macarvin@jonesday.com
ajdick@jonesday.com
abentz@jonesday.com

LANDRUM & SHOUSE

  /s R. Kent Westberry
R. Kent Westberry
LANDRUM & SHOUSE, LLP
220 W. Main St., Ste. 1900
Louisville, KY 40202-1395
Ph: (502) 589-7616
Fx: (502) 589-2119
kwestberry@landrumshouse.com

*Counsel for Donald J. Trump and Donald J. Trump for President Inc.*

- 14 -