IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| KASHIYA NWANGUMA, et al., ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | |
| v. ) | CASE NO. 3:16-cv-247-DJH |
| ) | |
| DONALD J. TRUMP, et al., ) | |
| ) | |
| DEFENDANTS. ) | |

**DEFENDANTS DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, AND DONALD J. TRUMP FOR PRESIDENT, INC.'S STATEMENT RESPECTING THEIR PROPOSED TRIAL PLAN**

Defendants Donald J. Trump, President of the United States, and Donald J. Trump for President, Inc. (the Trump Defendants) submit the attached proposed trial plan. Attachment A. The Trump Defendants conferred with Plaintiffs' counsel by email regarding the schedule and Plaintiffs' counsel raised a number of objections (Attachment B), which the parties were unable to resolve. Plaintiffs have submitted yet a third proposed trial plan to the Court (D.N. 43). While the dates are somewhat different in Plaintiffs' filing, the substance remains largely the same as their mark up of the Trump Defendants' proposal (Attachment B). The Trump Defendants provide this short statement in support of their plan.[*]

---

[*] This plan is premised on the Court's order denying a stay of discovery pending the district court's resolution of the pending 1292 motion to certify. In the interest of full disclosure and to facilitate scheduling, the Trump Defendants plan to file an objection to the denial of the stay with the district court on May 22, 2017.

I.     **BRIEFING REGARDING DEPOSING THE SITTING PRESIDENT OF THE UNITED STATES**

Within moments of the parties' conference with this Court two weeks ago regarding staying discovery, Plaintiffs' counsel sought dates for deposing the President of the United States. It is clear that Plaintiffs will persist in their quest to depose the President with little regard to either the burdens that will impose on the country or the significant separation-of-powers issues involved. Consequently, the Trump Defendants propose setting a schedule now for the briefing that will inevitably be required regarding whether Plaintiffs are entitled to depose the sitting President of the United States. But Plaintiffs objected to the very idea of briefing the issue, writing, "We see no basis for Mr. Trump to refuse to give a deposition in this case." Attachment B, p. 1. Plaintiffs' counsel further stated that "such a dispute should not be permitted to delay discovery in this case." *Id.*

Contrary to Plaintiffs' dismissive position, however, it is quite clear that the federal judiciary should not cavalierly authorize the deposition of the President of the United States without seriously considering, with the aid of briefing, the significant issues entailed in such an extraordinary step.

*First*, deposing the President is no "routine discovery dispute." *Cheney v. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 385 (2004). *Id.* As the Great Chief Justice said, "[i]n no case … would a court be required to proceed against the president as against an ordinary individual." *United States v. Burr*, 25 F. Cas. 187, 192 (C.C.D. Va. 1807). Whether a plaintiff is entitled to depose the sitting President of the United States is a question that has arisen only once before in the history of the Republic. *Clinton v. Jones*, 520 U.S. 681, 692 (1997). In this case, Plaintiffs' purported "need for information is only one facet" of the discovery dispute. *Cheney*, 542 U.S. at

385. "An important factor weighing in the opposite direction is the burden imposed by the discovery orders." *Id.* Because of that, this Court must carefully and deliberately consider whether deposing the sitting President is appropriate in this particular case.

The Supreme Court has "long recognized the unique position in the constitutional scheme that [the President] occupies." *Clinton*, 520 U.S. at 698. And though the Court has refrained from recognizing immunity from civil liability for sitting Presidents, the Court has explained that "the potential burdens on the President … are appropriate matters for the District Court to evaluate in its management of the case." *Id.* at 707. Thus, this Court will have to weigh the burdens that would fall on the office of the presidency against the benefits that a deposition might afford Plaintiffs. Given the critical legal defects in Plaintiffs' claims and the serious burdens on the executive branch a deposition of the President will impose, this Court should be fully apprised before it permits a deposition to go forward.

*Second*, even if the Court ultimately finds that a deposition is appropriate, the Court has a duty out of respect to a coordinate branch of government to carefully consider the issue and hear the arguments from the Chief Executive. The Supreme Court has explained that "[t]he high respect that is owed to the office of the Chief Executive … is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Id.* Because the Court will need to carefully consider the issue, it will need to hear from both sides and provide both sides enough time to research and prepare arguments. And the Executive Branch itself may well want to directly weigh in on the propriety of deposing the sitting President. *Id.* at 689 ("The Acting Solicitor General, representing the United States, supported the petition, arguing that the decision of the Court of Appeals was fundamentally mistaken and created serious risks for the institution of the Presidency."). It should not be deprived of notice and opportunity to pursue that option.

*Third*, regardless of what the Court orders in the scheduling conference, briefing at some point on this issue is guaranteed. In the normal course, a plaintiff would subpoena a witness, the witness would refuse, and the Court would hear argument on the issue. Because this dispute will necessarily arise in this case, the Court should exercise its authority to carefully manage discovery and set the schedule now so that all parties are on the same page and discovery can proceed in an orderly fashion.

*Fourth*, there is no merit to Plaintiffs' claim that the dispute will delay discovery. Plaintiffs have offered no other plan for refereeing this dispute. And nothing in the Trump Defendants' proposed order postpones any other discovery whatsoever. It merely sets a briefing schedule for a complex and important issue that is unique to this case. There is no way to avoid the fact that the issue will take time to brief and decide. And as to when briefing should occur, it makes eminent sense to conduct discovery from other sources first — that is, percipient witnesses and relevant documents — so that any deposition can avoid covering facts already established through other means.

At bottom, Plaintiffs want this Court to launch headlong into a constitutional crisis. The Supreme Court has taken a different view, one that requires a careful, measured approach to determining whether a plaintiff is entitled to depose the sitting President. For these reasons, the Court should adopt the briefing schedule proposed by the Trump Defendants.

## II. PLAINTIFFS' REMAINING OBJECTIONS

**Number of Depositions.** The Trump Defendants proposed 15 depositions by Plaintiffs and 20 by Defendants. Plaintiffs object, saying Defendants should only receive 15. But Plaintiffs are jointly represented and all share the same interest in this litigation. By contrast, there are five defendants in this case. The President and his former campaign are jointly represented, but the

other defendants do not share that representation. Mr. Bamberger has his own attorney and Mr. Heimbach is proceeding pro se. (The other defendant remains unnamed.) Further, Defendants' interests in this litigation diverge. Indeed, Mr. Bamberger and Mr. Heimbach have filed cross claims against the Trump Defendants. Giving the Defendants collectively a handful more depositions than the united Plaintiffs is appropriate.

**Time limit.** The Trump Defendants proposed to limit depositions to a maximum of seven hours unless the parties agreed to more time. Plaintiffs want to add "or by order of the Court." Attachment B, p. 2. That language is superfluous, because this Court has the power to order a deposition to go beyond seven hours. More importantly, Plaintiffs are signaling that they intend to tie up the President's time by attempting to depose him for more than seven hours, all the more reason this Court should set a briefing schedule on whether Plaintiffs can depose the President.

**Other deadlines.** The Trump Defendants suggested deadlines for disclosures and objections as trial approaches. Attachment A, at p. 2-3. For example, final witness lists should be due 30 days before trial. Defendants appear to object to these suggestions because the Court will set the deadlines. The suggested deadlines are just that, suggestions, and Plaintiffs have provided no substantive objection to the timing.

**Length of trial.** Plaintiffs believe a trial would take seven to ten days. They do not explain why they wish to take up that much of the Court's time. But in any event, the parties and the Court will be in a better position to evaluate how long the trial may last after discovery is complete.

**Peculiarities.** In their proposed plan, the Trump Defendants included language to notify the Court that this case will present "logistical difficulties and peculiarities unlike other civil litigation." *Id.* at 3. Consequently, the proposed plan stated that "(a) discovery must be carefully managed by the Court and limited to minimize disruption of the President's duties and (b)

discovery may involve privilege issues beyond run of the mill attorney-client privilege/work-product issues, requiring this Court's resolution." *Id.* Plaintiffs propose deleting that language, intimating that this is a run-of-the-mill civil suit. But this case involves the sitting President. Even if Plaintiffs are permitted to depose the President, this Court's intimate involvement will be required. And there will undoubtedly be challenges in scheduling the leader of the free world for a deposition.

## CONCLUSION

This skirmish is just the beginning of the disputes this Court will have to settle. This Court will save itself, the parties, and the Executive Branch, much headache if the Court sets a briefing schedule now regarding whether the President can be deposed. The Court should thus accept the Trump Defendants proposed plan.

- 7 -

Dated: May 16, 2017                    Respectfully submitted,

                                                           /s R. Kent Westberry
R. Kent Westberry
LANDRUM & SHOUSE, LLP
220 W. Main St., Ste. 1900
Louisville, KY 40202-1395
Tel: (502) 589-7616
Fax: (502) 589-2119
Email: kwestberry@landrumshouse.com

and

Michael Carvin (*admitted hac motion vice*)
Anthony Dick (*admitted hac motion vice*)
Andrew Bentz (*admitted hac motion vice*)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Tel: (202) 879-7643
Fax: (202) 626-1700
Email: macarvin@jonesday.com

*Counsel for Donald J. Trump and Donald J. Trump for President Inc.*