UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KASHIYA NWANGUMA, et al.,                                                          Plaintiffs,

v.                                                                         Civil Action No. 3:16-cv-247-DJH-HBB

DONALD J. TRUMP, et al.,                                                         Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Kashiya Nwanguma, Molly Shah, and Henry Brousseau allege that they were attacked by audience members, including Defendants Matthew John Heimbach and Alvin Bamberger, during a rally for Donald J. Trump during his 2016 presidential campaign. (Docket No. 1-1) They assert that Trump incited the violence by saying "Get 'em out of here," and they seek to recover damages from Trump and his campaign, Donald J. Trump for President, Inc., as well as Bamberger and Heimbach. (*See id.*) The Court previously granted the Trump Defendants' motion to dismiss with respect to Plaintiffs' claim of vicarious liability but allowed their incitement and negligence claims to proceed.[1] (D.N. 27) The Trump Defendants have moved to certify that Memorandum Opinion and Order for interlocutory appeal. (D.N. 36) In the alternative, they ask the Court to reconsider its ruling. (*See id.*) The Trump Defendants also object to Magistrate Judge H. Brent Brennenstuhl's denial of their motion to stay discovery pending resolution of the motion to certify. (D.N. 46) For the reasons explained below, the motion to certify for interlocutory appeal or to reconsider will be granted. The objection will be overruled as moot.

---

[1] Heimbach and Bamberger asserted cross-claims against the Trump Defendants (D.N. 30; D.N. 32-1), which the Trump Defendants have moved to dismiss (D.N. 40); that motion will be addressed in a separate opinion.

1

**I.**

The following facts are set out in the complaint and, as required, were accepted as true for purposes of the Court's ruling on the motion to dismiss. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

On March 1, 2016, Trump held a campaign rally at the Kentucky International Convention Center in Louisville, Kentucky. (D.N. 1-1, PageID # 10; *see id.*, PageID # 8) Nwanguma, Shah, and Brousseau each attended the rally for the purpose of "peacefully protesting Trump." (*Id.*, PageID # 11-13) As they were protesting, Trump said, "Get 'em out of here." (*Id.*, PageID # 10) Heimbach, Bamberger, and other audience members then physically attacked Plaintiffs. Nwanguma, who is African-American, was shoved first by Heimbach and then by Bamberger, who also struck her. (*Id.*, PageID # 12) Shah was likewise shoved by Heimbach and other audience members. (*Id.*, PageID # 13) Brousseau, a seventeen-year-old high school student, was punched in the stomach by an unknown defendant believed to be a member of the Traditionalist Worker Party, a white nationalist group Heimbach was representing at the rally. (*Id.*, PageID # 7-9, 12-14) Plaintiffs allege that as they were being attacked, Trump said, "Don't hurt 'em. If I say 'go get 'em,' I get in trouble with the press . . . ." (*Id.*, PageID # 10)

In a letter to the Korean War Veterans Association, whose uniform he wore at the rally, Bamberger described the incident as follows: "Trump kept saying 'get them out, get them out' and people in the crowd began pushing and shoving the protestors . . . I physically pushed a young woman down the aisle toward the exit . . . ." (D.N. 1-1, PageID # 15 ¶ 76 (first omission in original) (quoting letter to KWVA)) Heimbach acknowledged in a blog post that he had "help[ed] the crowd drive out one of the women" who were protesting. (*Id.*, PageID # 14 ¶ 70)

Videos recorded at the rally captured Heimbach and Bamberger's actions. (*Id.*, PageID # 11 ¶ 46)

In its March 31, 2017 Memorandum Opinion and Order, the Court granted in part and denied in part the Trump Defendants' motion to dismiss. (D.N. 27) The Court concluded that Plaintiffs had failed to adequately allege that the Trump Defendants should be held vicariously liable for Heimbach and Bamberger's actions but found the complaint sufficient as to Plaintiffs' claims of incitement and negligence. (*See id.*, PageID # 271-84) The Trump Defendants have since registered their displeasure at that decision in a variety of increasingly impatient ways: filing the instant motion; objecting to the magistrate judge's refusal to stay discovery pending resolution of the motion (D.N. 46); sending a letter from counsel urging the Court to expedite its decision (D.N. 54); and, most recently, seeking a writ of mandamus from the U.S. Court of Appeals for the Sixth Circuit.[2] *See In re Donald Trump*, No. 17-5830 (6th Cir. July 20, 2017). Under the circumstances, the Court felt it necessary to proceed with consideration of the Trump Defendants' motion notwithstanding their subsequent petition. The Court is aware of the unique sensitivities involved where the President of the United States is a party to litigation. In the event the Court of Appeals remands the case for factual development, the Court stands ready to expedite discovery in a manner appropriate to the circumstances of this case.

## II.

The Court may certify an order for interlocutory appeal if it finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the

---

[2] The petition for writ of mandamus does not divest this Court of jurisdiction. *See Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) (citing *Ellis v. U.S. Dist. Ct.*, 360 F.3d 1022, 1023 (9th Cir. 2004) (en banc)); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995).

litigation." 28 U.S.C. § 1292(b). "[I]nterlocutory appeals are limited to questions that present 'neat abstract issues of law.'" *Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006) (quoting *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997)).

**A.     Incitement**

The Trump Defendants insist that the First Amendment should prevent Plaintiffs' incitement claim from proceeding and that whether Trump's statement was protected is a purely legal question amenable to interlocutory review. They cite various Supreme Court cases in support of their contention that the Court must resolve the First Amendment issue before allowing any discovery. (*See* D.N. 36-1, PageID # 377-81; D.N. 47, PageID # 447-49)  While the defendants are correct that First Amendment protection is for the Court, not a jury, to decide, *see Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983), it was not treated as a threshold issue in the cases they cite. In *Harisiades v. Shaughnessy*, for example, the question before the Supreme Court was "whether the United States constitutionally may deport a legally resident alien because of membership in the Communist Party"; the case arrived at the Court following administrative hearings and orders of deportation. 342 U.S. 580, 581 (1952); *see id.* at 581-83, 591-92. Similarly, *Hess v. Indiana*, 414 U.S. 105 (1973), and *Cohen v. California*, 403 U.S. 15 (1971)—both criminal cases involving First Amendment defenses—were fully litigated prior to appeal, and the Supreme Court's decisions in those cases were based on the evidence of record.[3] *See Hess*, 414 U.S. at 108-09 ("Since the uncontroverted evidence showed that Hess'[s] statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, any action."); *Cohen*, 403 U.S. at 20 (noting lack of evidence

---

[3] Likewise, *McCoy v. Stewart*, 282 F.3d 626 (9th Cir. 2002), was a habeas proceeding arising out of the petitioner's conviction for promoting gang activity. *See id.* at 628 & n.1, 632-33.

4

"that anyone who saw [the defendant] was in fact violently aroused or that [the defendant] intended such a result").

Indeed, the cases cited by the Trump Defendants demonstrate that whether speech constitutes incitement is a fact-specific inquiry. For example, in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982), the Supreme Court concluded that the speech at issue was protected by the First Amendment but noted that "[i]f that language had been followed by acts of violence, a substantial question would be presented whether [the speaker] could be held liable for the consequences of that unlawful conduct." *Id.* at 928; *see also McCoy*, 282 F.3d at 631 n.6 ("McCoy's argument that his speech was mere abstract advocacy would, of course, be undermined if the state could prove that the speech actually caused imminent lawless action"). That is precisely the situation in this case: even prior to discovery, Plaintiffs have pointed to evidence that violence did in fact occur and that it was Trump's statement that prompted audience members—in particular, Bamberger and Heimbach—to engage in that violence. (*See* D.N. 1-1, PageID # 14-15 (citing Heimbach's blog post and Bamberger's letter))

The Trump Defendants cite *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984), for the proposition that courts must "examine for [them]selves the statements in issue and the circumstances under which they were made" in order to determine whether they are protected by the First Amendment. *Id.* at 508 (other internal quotation marks omitted) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964)). To "examine . . . the circumstances under which [statements] were made," the Court must have before it the relevant evidence. *See id.* ("This Court's duty is not limited to the elaboration of constitutional principles; we must also in proper cases *review the evidence* to make certain that those principles have been constitutionally applied." (emphasis added) (quoting *Sullivan*, 376 U.S. at 285)). Indeed, *Bose* entailed "a

5

protracted period of pretrial discovery" before the district court denied the defendant's motion for summary judgment and held a lengthy bench trial on the merits. *Id.* at 488-89.

Thus, the caselaw cited by the Trump Defendants makes clear that whether Trump's statement advocated the use of force does not "turn[] on the objective meaning of the words at issue," as the Trump Defendants contend. (D.N. 47, PageID # 447) Rather, that determination depends in part on the circumstances surrounding the statement. *See, e.g.*, *Bose*, 466 U.S. at 508; *cf. Connick*, 461 U.S. at 147-48 ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."). On interlocutory appeal, the Sixth Circuit would accept as true Plaintiffs' allegations regarding those circumstances. *See Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). The Trump Defendants acknowledge this in passing but nonetheless appear confident that Trump's statement will be considered in a vacuum.[4] (D.N. 47, PageID # 449-50 ("[I]f an interlocutory appeal is granted, the Trump Defendants will argue to the Sixth Circuit that Mr. Trump's speech cannot constitute 'incitement' as a matter of law because, even accepting Plaintiffs' factual allegations as true, he said nothing to advocate or encourage violence."); *see, e.g.*, D.N. 36-1, PageID # 378-79 ("[T]he Trump Defendants contend that, as a matter of law, Mr. Trump's statements cannot be 'incitement' because he did not make any

---

[4] In support of their position, the Trump Defendants cite *Bible Believers v. Wayne County, Michigan*, 805 F.3d 228 (6th Cir. 2015) (en banc), where the Sixth Circuit concluded that the appellants' "speech was not incitement to riot simply because they did not utter a single word that can be perceived as encouraging violence or lawlessness." *Id.* at 246. Aside from the fact that—in contrast to the imperative statement under consideration here—the speech at issue in *Bible Believers* consisted of declaratory (if inflammatory) comments reflecting the appellants' feelings about Muslims and Islam, Trump's order unquestionably *was* "perceived as encouraging violence or lawlessness" by at least some members of his audience, including Bamberger and Heimbach. (*See* D.N. 1-1, PageID # 14-15; D.N. 30, PageID # 316 ¶¶ 4-6 (Bamberger's cross-claim stating that he acted in response to the Trump Defendants' "urging"); D.N. 32-1, PageID # 348 ¶ 133 (Heimbach's answer asserting as a defense that he "acted pursuant to the directives and requests of" the Trump Defendants))

mention of violence or lawless action.")) The issue, they maintain, is whether the statement "objectively advocated unlawful violence." (D.N. 47, PageID # 447)

The words "Get 'em out of here" are not objectively violent, of course. But speech may be "sanctioned as incitement" if it "explicitly *or implicitly* encouraged the use of violence or lawless action."[5] *Bible Believers*, 805 F.3d at 246 (emphasis added) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam)). As explained above, context matters; "the character of every act depends upon the circumstances in which it is done." *Schenck v. United States*, 249 U.S. 47, 52 (1919); *see Bose*, 466 U.S. at 508. For example, the exclamation "shoot!" might constitute incitement if directed to a crowd of angry armed individuals, but shouted by a basketball fan or muttered in disappointment, it has no violent connotations. In short, the mere absence of overtly violent language in Trump's statement does not appear fatal to Plaintiffs' incitement claim.

For purposes of interlocutory appeal under § 1292(b), "[a] legal issue is controlling if it could materially affect the outcome of the case." *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citing *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)). Resolution of the incitement

---

[5] The Trump Defendants point to a footnote in the *Bible Believers* opinion in which the court observed that some scholars believe "[i]ncitement requires . . . that 'the words used by the speaker *objectively encouraged* and urged and provoked imminent action.'" 805 F.3d at 246 n.11 (quoting 5 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 20.15(d) (online ed. May 2015)). According to the Trump Defendants, this footnote "emphasized that the proper *Bra[n]denburg* test is whether the speech '*objectively encouraged* and urged and provoked imminent action.'" (D.N. 47, PageID # 458 (quoting *Bible Believers*, 805 F.3d at 246 n.11)) After noting that scholarly viewpoint, however, the Sixth Circuit reiterated that "*Brandenburg*'s plain language (reinforced by *Hess*) requires that the words must, at minimum, implicitly encourage the use of force or lawlessness, or the undertaking of some violent 'act.'" *Bible Believers*, 805 F.3d at 246 n.11. In any event, "Get 'em out of here" easily passes Rotunda and Nowak's test, which requires not that speech objectively encouraged imminent *lawless* action, but simply "imminent action." *Id.*

7

issue in this case could significantly affect the outcome: if the Sixth Circuit Court of Appeals were to find Trump's statement protected by the First Amendment, Plaintiffs' case against the Trump Defendants would be foreclosed.[6] For the same reason, an immediate appeal of this issue "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Additionally, there exists "substantial ground for difference of opinion" on this issue, *id.*; whether speech constitutes incitement is frequently a close question, *see Harisiades*, 342 U.S. at 592, and is particularly so here given that Trump's statement, on its face, does not explicitly call for violence. Because the Court finds the elements of § 1292 to be met, interlocutory appeal of the incitement question is warranted, and the Court will certify that question for appeal.

**B.     Negligence**

As to Plaintiffs' negligence claim, the Court will reverse its prior ruling. Upon further review, the Court concludes that the negligent-speech theory set forth in the complaint is incompatible with the First Amendment. *See James v. Meow Media, Inc.*, 300 F.3d 683, 698 (6th Cir. 2002) ("In protecting against the propensity of expression to cause violence, states may only regulate that speech which is '*directed to* inciting or producing *imminent* lawless action and *is likely to incite* or produce such action.'" (quoting *Brandenburg*, 395 U.S. at 447)).

Plaintiffs maintain that they have asserted a claim of "negligent security" that rests not on Trump's statement, but rather on the Trump Defendants' failure to prevent violence at the rally. (D.N. 42, PageID # 407) Their complaint alleges that the Trump Defendants "had a duty under Kentucky common law to provide adequate security in order to ensure the safety, protection, and well-being of Rally attendees and the general public in connection with the Rally." (D.N. 1-1, PageID # 21 ¶ 117) The claimed breach of that duty, however, is "encouraging members of the

---

[6] As explained below, the Court, upon reconsideration, concludes that dismissal of Plaintiffs' negligence claim is appropriate.

audience" to remove Plaintiffs. (*Id.* ¶ 121; *see also id.*, PageID # 21-22 ¶ 122 ("In particular, the directive to eject a Black woman, when several members of a group that Trump knew or should have known was a recognized hate group were present in the audience, was entirely reckless, or at least negligent/grossly negligent.")) Although they also allege that the Trump Defendants "knew or should have known that relying on the crowd of Trump supporters to provide security, including making them responsible for ejecting peaceful protestors from the crowd, was an inadequate and entirely reckless, or at least negligent/grossly negligent, way in which to provide security" (*id.* ¶ 120), Plaintiffs do not contend that there were insufficient or incompetent professional security personnel present, nor do they make any other factual allegations suggesting that the security provided at the rally was inadequate to prevent violence. Rather, the purported negligence was ordering audience members to remove protestors—an intentional act, and one subsumed by Plaintiffs' incitement claim, the appropriate vehicle for challenging Trump's statement. *See James*, 300 F.3d at 698.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  The Trump Defendants' motion to certify the Court's March 31, 2017 Memorandum Opinion and Order for interlocutory appeal or to reconsider that decision (D.N. 36) is **GRANTED**.

(2)  Pursuant to 28 U.S.C. § 1292(b), the Court's March 31, 2017 Memorandum Opinion and Order is **AMENDED** to certify the following question for immediate appeal:

Does the First Amendment protect Donald J. Trump's March 1, 2016 statement "Get 'em out of here," or may the statement be found to constitute incitement of a riot?

(3) Count V of Plaintiffs' complaint is **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

(4) The Trump Defendants' objection to the magistrate judge's denial of their motion to stay discovery pending resolution of the motion to certify (D.N. 46) is **OVERRULED** as moot. Discovery as to the Trump Defendants shall be **STAYED** pending resolution of the interlocutory appeal. Discovery as to Bamberger and Heimbach shall proceed as set forth in the Scheduling Order entered May 22, 2017 (D.N. 45). *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013).

August 8, 2017

                                        **David J. Hale, Judge**
                                        **United States District Court**