# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: September 11, 2018

Mr. Gregory A. Belzley
P.O. Box 278
Prospect, KY 40059

Mr. Daniel J. Canon
1205 E. Washington Street, Suite 111
Louisville, KY 40206

Mr. Michael Anthony Carvin
Mr. Anthony John Dick
Mr. Vivek Suri
Jones Day, 51 Louisiana Avenue, N.W.
Washington, DC 20001

Mr. Jon M. Greenbaum
Lawyers' Committee for Civil Rights Under Law
900 15th Street, N.W., Ninth Floor
Washington, DC 20005

Mr. David N. Ward
Adams Landenwich & Walton
517 W. Ormsby Avenue
Louisville, KY 40203

          Re:  Case No. 17-6290, *Kashiya Nwanguma, et al v. Donald Trump, et al*
               Originating Case No. : 3:16-cv-00247

Dear Counsel,

  The Court issued the enclosed opinion today in this case.

                                      Sincerely yours,

                                      s/Cathryn Lovely
                                      Opinions Deputy

cc: Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0202p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

KASHIYA NWANGUMA; MOLLY SHAH; HENRY BROUSSEAU,

       *Plaintiffs-Appellees*,

       v.

DONALD J. TRUMP; DONALD J. TRUMP FOR PRESIDENT, INC.,

       *Defendants-Appellants*.

> No. 17-6290

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:16-cv-00247—David J. Hale, District Judge.

Argued: June 6, 2018

Decided and Filed: September 11, 2018

Before: McKEAGUE, GRIFFIN and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael A. Carvin, JONES DAY, Washington, D.C., for Appellants. Daniel J. Canon, DANIEL J. CANON, PSC, Louisville, Kentucky, for Appellees. **ON BRIEF:** Michael A. Carvin, Anthony J. Dick, Andrew J. M. Bentz, Vivek Suri, JONES DAY, Washington, D.C., for Appellants. Gregory A. Belzley, BELZLEYBATHURST ATTORNEYS, Prospect, Kentucky, David N. Ward, CLAY DANIEL WALTON & ADAMS, PLC, Louisville, Kentucky, for Appellees. Jon M. Greenbaum, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., for Amicus Curiae.

    McKEAGUE, J., delivered the opinion of the court in which GRIFFIN and WHITE, JJ., joined. WHITE, J. (pg. 14), delivered a separate concurring opinion.

## OPINION

McKEAGUE, Circuit Judge.  Plaintiffs participated in a Trump for President campaign rally in Louisville in March 2016 . . . with the purpose of protesting.  Perceived to be disruptive, they were unceremoniously ushered out after then-candidate Donald J. Trump said, "Get 'em out of here."  Plaintiffs were pushed and shoved by members of the audience as they made their exit and now seek damages from Trump alleging his actions amounted to "inciting to riot," a misdemeanor under Kentucky law.  The district court denied Trump's motion to dismiss the claim but certified its order for immediate interlocutory appeal.  The court identified a two-part question for review: whether plaintiffs have stated a valid claim under Kentucky law and, if so, whether the First Amendment immunizes Trump from punishment under state law.  We answer "no" to the first part, because plaintiffs' allegations do not satisfy the required elements of "incitement to riot."  As to the second part, we hold "yes," Trump's speech enjoys First Amendment protection, because he did not specifically advocate imminent lawless action.  The district court's denial of Trump's motion to dismiss the claim must therefore be reversed.

## I. BACKGROUND[1]

On March 1, 2016, a campaign rally was conducted at the Kentucky International Convention Center in Louisville.  The rally was organized by defendant Donald J. Trump for President, Inc. ("the Trump campaign"), a Virginia corporation.  During the rally, then-presidential candidate Donald J. Trump, a resident of New York, spoke for approximately 35 minutes. Plaintiffs in this action, Kashiya Nwanguma, Molly Shah and Henry Brousseau, all residents of Kentucky, attended the rally with the intention of peacefully protesting.  Protesters' actions during Mr. Trump's address precipitated directions from Trump on five different

---

[1]This fact summary is drawn from the allegations of the complaint, R. 1-1, Complaint, Page ID 5, accepted as true for purposes of this appeal.  Plaintiffs have noted that Trump's speech at the Louisville rally was video-recorded and the recording may be viewed online at www.youtube.com.  The Trump defendants object to consideration of the youtube video, arguing that it's not part of the record and was not before the district court when it made its ruling.  We agree.  The video is given no consideration in our analysis.  *See Bormuth v. County of Jackson*, 870 F.3d 494, 500–01 (6th Cir. 2017) (en banc) (declining to consider videos presented for the first time on appeal).

occasions to "get 'em out of here." R. 1-1, Complaint at ¶ 32, Page ID 10. In response, members of the audience assaulted, pushed and shoved plaintiffs, and Brousseau was punched in the stomach. Defendants Matthew Heimbach and Alvin Bamberger, Ohio residents and Trump supporters, were in the audience during the rally. They participated in the assaults on plaintiffs.

Less than two months later, plaintiffs filed their complaint in the Jefferson Circuit Court in Louisville, naming Trump, the Trump campaign, Heimbach, Bamberger, and an unknown woman who punched Brousseau as defendants. The complaint sets forth state law tort claims for battery, assault, incitement to riot, as well as negligence, gross negligence and recklessness. The Trump defendants immediately removed the action to federal court based on the parties' diversity of citizenship. They then moved to dismiss the claims against them for failure to state claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The district court granted the motion in part and denied it in part. *Nwanguma v. Trump*, 273 F. Supp. 3d 719 (W.D. Ky. 2017). The court dismissed claims against the Trump defendants alleging they were vicariously liable for the assaultive actions of Heimbach, Bamberger and the unknown woman. The court reasoned that plaintiffs' allegations were insufficient to state a plausible claim that these individual defendants acted as agents of the Trump defendants. The court refused to dismiss the incitement-to-riot and negligence claims. In a later decision, however, the district court revisited and reversed its decision on the negligence claim against the Trump defendants. The court concluded that plaintiffs' negligent-speech theory was "incompatible with the First Amendment." In the same order, the court also certified its order denying dismissal of the incitement-to-riot claim as appropriate for immediate appeal under 28 U.S.C. § 1292(b). A panel of this court granted the Trump defendants' ensuing petition for leave to appeal. *In re Donald J. Trump*, 874 F.3d 948 (6th Cir. 2017). Hence, the viability of the incitement-to-riot claim is the sole focus of this interlocutory appeal.

## II. ANALYSIS

### A. Standard of Review

The order denying Trump's motion to dismiss is reviewed de novo. *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011). Under Rule 12(b)(6), the complaint is viewed in the

light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must "raise a right to relief above the speculative level." *Id.* The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks and citation omitted).

### B. Incitement to Riot

Plaintiffs' Count III claim alleges that defendant Trump incited a riot, a misdemeanor under the Kentucky Penal Code, Ky. Rev. Stat. § 525.040, actionable in damages under Ky. Rev. Stat. § 446.070. "A person is guilty of inciting to riot when he incites or urges five (5) or more persons to create or engage in a riot." Ky. Rev. Stat. § 525.040(1). "Riot," in relevant part, is defined as "a public disturbance involving an assemblage of five (5) or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons . . . ." Ky. Rev. Stat. § 525.010(5).

These statutory definitions implicate five elements: (1) incitement (2) of five or more persons (3) to engage in a public disturbance (4) involving tumultuous and violent conduct (5) creating grave danger of personal injury or property damage. The district court reasoned that the allegation that Trump directed his supporters to "get 'em out of here" satisfied the first two elements. Inasmuch as Trump's directive was nonspecific, it could plausibly have been directed to five or more persons. Insofar as "incites" appears in the statute alongside "urges," Trump's repeated express directive to "get 'em out of here" amounts to the requisite urging to action. Yet, as the district court recognized, where, as here, "incitement" is used in a criminal law, it

refers to "[t]he act of persuading another to commit a crime." *Nwanguma*, 273 F. Supp. 3d at 726 (quoting *Black's Law Dictionary* (10th ed. 2014)). Here, of course, the crime Trump allegedly incited is a riot, which, by statutory definition, implicates the latter three elements. Hence, without incitement to riot, specifically, there is no "incitement."

The district court's analysis of the latter three elements, however, is decidedly thin. The court characterized the factual allegations of the complaint as describing "a chaotic and violent scene in which a crowd of people turned on three individuals, and those individuals were injured as a result." *Id*. This, the district court held, is sufficient. The court correctly held that it was not necessary that a riot have actually ensued. Still, it stopped short of identifying what allegations supported a plausible finding that Trump, by words or actions, incited tumultuous and violent conduct posing grave danger of personal injury. In fact, the plausibility of such a finding is directly negated by plaintiffs' own allegation that Trump's "get 'em out of here" statement was closely followed by his admonition, "Don't hurt 'em." R. 1-1, Complaint at ¶ 34, Page ID 10. Defendants argue these words cannot possibly be interpreted as advocating a riot or the use of any violence.

The district court rejected this argument as an attempt to replace the *Twombly/Iqbal* plausibility standard with a probability standard. The court observed that "the plausibility of the Trump Defendants' explanation for Trump's statement 'does not render all other [explanations] implausible.'" *Nwanguma*, 273 F. Supp. 3d at 725 (citing *Watson Carpet & Flooring, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011)). But here, the Trump defendants are not merely proffering a plausible non-riot-inciting *explanation* for Trump's "get 'em out of here" statement. They are quoting Trump's own contemporaneous words, "don't hurt 'em," to negate the very *possibility* that the former statement could be reasonably construed as inciting "tumultuous and violent conduct." Yet, these two short statements represent the entire universe of Trump's actions that are alleged to substantiate plaintiffs' claim for inciting to riot.[2]

---

[2]Plaintiffs argue, and the district court accepted, that their allegations of similar occurrences at other Trump for President rallies are properly considered as indicating Trump's intent to incite a riot in Louisville, notwithstanding the facially innocuous nature of his words. But here, as we assess the sufficiency of the pleadings, Trump's intent is not at issue. What is at issue is whether plaintiffs' allegations of Trump's words and actions at the

Focusing on the former statement, the district court held that it "implicitly" encouraged the use of violence. *Id.* at 727. Yet, even if "get 'em out of here," standing alone, might be reasonably construed as implicitly encouraging unwanted physical touching, the charge here is "inciting to riot." The notion that Trump's direction to remove a handful of disruptive protesters from among hundreds or thousands in attendance could be deemed to implicitly incite a riot is simply not plausible—especially where any implication of incitement to riotous violence is explicitly negated by the accompanying words, "don't hurt 'em." If words have meaning, the admonition "don't hurt 'em" cannot be reasonably construed as an urging to "hurt 'em."

Although the *Twombly/Iqbal* "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Here, the district court's construction of Trump's statements depends on a reading flatly contradicted by the words' plain meaning. The suggestion that "don't hurt 'em" could reasonably be understood as encouraging violence poses a sheer possibility that "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557 (interior quotation marks omitted)).

Accordingly, we hold that plaintiffs' allegations fail to make out a valid incitement-to-riot claim under Kentucky law. The words allegedly uttered by presidential candidate Donald Trump during his speech do not make out a plausible claim for incitement to engage in tumultuous and violent conduct creating grave danger of personal injury or property damage. Plaintiffs have thus failed to state a viable claim for incitement to riot. Moreover, any doubt about this conclusion is wholly dispelled by consideration of the constitutional protection Trump's speech enjoys under the First Amendment.

---

Louisville rally (i.e., two short statements, the first of which was repeated several times) make out a plausible claim for incitement to riot.

### C. First Amendment Protection

In *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the Court recognized "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. "The *Brandenburg* test precludes speech from being sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc) (footnote omitted).

Under the *Brandenburg* test, only speech that explicitly or implicitly encourages the imminent use of violence or lawless action is outside the protection of the First Amendment. This looks like a close analogue for the kind of speech required to make out the charge of inciting to riot under Kentucky law. It follows that if we were to hold that plaintiffs' allegations *do* state a plausible incitement-to-riot claim under Kentucky law, the claim might be expected to fall outside the protection of the First Amendment under the *Brandenburg* test. What comes with the constitutional standard, however, is an illustrative body of case law. And what this case law makes clear is that, even if plaintiffs' allegations could be deemed to make out a plausible claim for incitement to riot under Kentucky law, the First Amendment would not permit prosecution of the claim.

For instance, in *Bible Believers*, our court, sitting *en banc*, recently addressed offensive and grossly intolerant speech of self-described Christian evangelists preaching hate and denigration of Islam to a crowd of Muslims at the Arab International Festival in Dearborn, Michigan. The court held the speech did not amount to incitement to riot under the *Brandenburg* test, despite the obviously explosive context, because it did not include "a single word" that could be perceived as encouraging, explicitly or implicitly, violence or lawlessness. *Id.* at 246. The same can be said of Trump's speech in this case: not a single word encouraged violence or lawlessness, explicitly or implicitly. Moreover, the *Bible Believers* court observed that "[t]he hostile reaction of a crowd does not transform protected speech into incitement." *Id.* Even

though the Bible Believers' speech actually triggered a predictably violent reaction, it was their speech that the court scrutinized. And their speech was held to be protected, despite its blatantly offensive and even provocative nature and despite the crowd's reaction. It follows that if Trump's speech is protected—because it, like that of the Bible Believers, did not include a single word encouraging violence—then the fact that audience members reacted by using force does not transform Trump's protected speech into unprotected speech. The reaction of listeners does not alter the otherwise protected nature of speech.

Nor is "the mere tendency of speech to encourage unlawful acts . . . sufficient reason for banning it." *Id.* at 245 (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002)). What is required, to forfeit constitutional protection, is incitement speech that "specifically advocate[s]" for listeners to take unlawful action. *Id.* (citing *Hess v. Indiana*, 414 U.S. 105, 109 (1973)). Trump's words may *arguably* have had a tendency to encourage unlawful use of force, but they did not specifically advocate for listeners to take unlawful action and are therefore protected. As the *Bible Believers* court further observed, "[i]t is not an easy task to find that speech rises to such a dangerous level that it can be deemed incitement to riot." *Id.* at 244. The words alleged in this case, much less offensive than those of the Bible Believers, are not up to the task demanded by *Brandenburg*.

The district court considered our *Bible Believers* ruling and authorities cited in it and reached a different conclusion: "Based on the allegations of the complaint, which the Court must accept as true, Trump's statement at least 'implicitly encouraged the use of violence or lawless action.'" *Nwanguma*, 273 F. Supp. 3d at 727 (quoting *Bible Believers*, 805 F.3d at 246). But the district court did not identify "a single word" in Trump's speech that could be perceived as encouraging violence or lawlessness, thereby ignoring the fundamental teaching of *Bible Believers*. Instead, the district court conclusorily stated, "it is plausible that Trump's direction to 'get 'em out of here' advocated the use of force." *Id.* Finding little support for the first *Brandenburg* factor—*specific* advocacy of violence—the court ostensibly placed heavy reliance on the allegations addressed to the latter two *Brandenburg* factors. That is, the court relied on plaintiffs' allegations that Trump intended violence to occur and knew that his words were likely to result in violence.

Case 3:16-cv-00247-DJH-HBB  Document 65  Filed 09/12/18  Page 11 of 17 PageID #: 713
Case: 17-6290    Document: 30-2    Filed: 09/11/2018    Page: 9    (11 of 17)

No. 17-6290                         *Nwanguma v. Trump*                         Page 9

This very approach was rejected in *Hess v. Indiana*, where the Court reversed the judgment of the Indiana Supreme Court. 414 U.S. at 107–09. The Court noted in *Hess* that the state court had placed primary reliance on evidence that the speaker's statement was *intended* to incite further lawless action and was *likely* to produce such action. This was not enough. The *Hess* Court focused on the words, on the language, that comprised the subject speech, i.e., the first *Brandenburg* factor. "It hardly needs repeating," the Court repeated, "that the constitutional guarantees of freedom of speech forbid the States to punish the use of *words* or *language* not within narrowly limited classes of speech." *Id.* at 107 (quoting *Gooding v. Wilson*, 405 U.S. 518, 521–22 (1972)) (internal quotation marks omitted; emphasis added). And in applying this wisdom, the Court likewise tied its conclusion to the words of the subject speech: "And since there was no evidence or rational inference from the import of the *language*, that his *words* were intended to produce, and likely to produce, imminent disorder, those *words* could not be punished by the State on the ground that they had 'a tendency to lead to violence.'" *Id.* at 109 (quoting the Indiana court's rationale) (emphasis added).

In other words, *Hess* teaches that the speaker's intent to encourage violence (second factor) and the tendency of his statement to result in violence (third factor) are not enough to forfeit First Amendment protection unless the words used specifically advocated the use of violence, whether explicitly or implicitly (first factor). Here, too, the district court, like the Indiana Supreme Court in *Hess*, placed too much weight on the second and third *Brandenburg* factors while slighting the key role of the first. Yet, it is undisputed that the speech plaintiffs would punish under Kentucky law must meet all three factors to avoid First Amendment free speech protection.

Plaintiffs maintain that assessment of Trump's words cannot be limited to their facial import; they must be evaluated in context. Their argument is not without support. In *Snyder v. Phelps*, 562 U.S. 443 (2011), the Court observed:

> [T]he court is obligated to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression. In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said.

*Id.* at 453–54 (internal quotation marks and citations omitted). So, yes, in addition to the content and form of the words, we are obliged to consider the context, based on the whole record. Here, of course, the "whole record" consists of the complaint. And while we accept well-pled factual allegations as true, we are not required to accept legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555. Further, under the above teaching from *Snyder*, the court's examination is focused on the content, form, and context of the *speech*: "what was *said*, where it was *said*, and how it was *said*."

Of course, what is here alleged to constitute incitement to riot is just a few words, "get 'em out of here," repeated several times. The words were said at a campaign rally by the main speaker in response to disturbances caused by protesters. The words were self-evidently said in order to quell the disturbances by removing the protesters. The words were directed to unidentified listeners in the Convention Center, among whom most were Trump supporters who were not sympathetic with the protesters. In the ears of some supporters, Trump's words may have had a tendency to elicit a physical response, in the event a disruptive protester refused to leave, but they did not specifically advocate such a response. As to how the offensive words were said, we know, most relevantly, by plaintiffs' own allegations, that the words were accompanied by the admonition, "don't hurt 'em." That this undercuts the alleged violence-inciting sense of Trump's words can hardly be denied.

In fact, Trump's admonition not to harm is analogous to the circumstance considered in *Bible Believers* as neutralizing the inciting tendency of words that were even more offensive in nature and delivered in an even more volatile context:

> The only references to violence or lawlessness on the part of the Bible Believers were messages such as, "Islam is a Religion of Blood and Murder," "Turn or Burn," and "Your prophet is a pedophile." These messages, however offensive, do not advocate for, encourage, condone, or even embrace imminent violence or lawlessness. Although it might be inferred that the Bible Believers' speech was intended to anger their target audience, the record is devoid of any indication that they intended imminent lawlessness to ensue. Quite to the contrary, the Bible Believers contacted Wayne County prior to their visit, requesting that the [Wayne County Sheriff's Office] keep the public at bay so that the Bible Believers could "engage in their peaceful expression."

*Bible Believers*, 805 F.3d at 244. Thus, again, in *Bible Believers*, we see the court examining the *words* used by the speaker. Upon examining the words, the court found first, that they did not specifically advocate violence; and second, that any inference that might have been drawn from the offensive and violence-inciting tendency of the words' content and context was negated by other circumstances. The same result obtains here. Just as the Bible Believers took reasonable measures to ensure peaceful communication of their ideas and prevent violence, Trump's speech itself included express disavowal and discouragement of violence.

In its examination of context, the *Snyder* Court, too, addressed offensive speech—opposition to homosexuality in the military—communicated by picketing signs in close proximity to a military funeral for a Marine killed on active duty in Iraq. Despite the sensitive context and the pain inflicted by the picketers' speech on the family of the fallen Marine, the Court held the speech was protected by the First Amendment. Because the speech was protected, its setting, or context, could not render it unprotected. *Snyder*, 562 U.S. at 454–55. In order to provide adequate breathing space for public debate, the Court observed, the First Amendment requires government tolerance of insulting and even outrageous speech. *Id.* at 458.

Accordingly, our review of the content, form, and context of Trump's alleged words as a whole, per *Snyder*, reveals that his speech does not come within one of the "narrowly limited classes of speech" that do not enjoy First Amendment protection. *See Hess*, 414 U.S. at 107.

Finally, we note that the parties have devoted no little energy to the question whether the subject speech should be evaluated "objectively"—the Trump defendants arguing that it must, per *Bible Believers*, and plaintiffs insisting that's not what *Bible Believers* holds. The source of the controversy is a footnote:

> Incitement requires, in the view of some constitutional scholars, that "the words used by the speaker *objectively encouraged* and urged and provoked imminent action." 5 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 20.15(d) (Online ed. May 2015) (Westlaw subscription) (citing *Hess,* 414 U.S. 105, 94 S. Ct. 326; Volokh, *supra, Crime-Facilitating Speech* ). *Brandenburg*'s plain language (reinforced by *Hess*) requires that the words must, at minimum, implicitly encourage the use of force or lawlessness, or the undertaking of some violent "act"; therefore, we say so explicitly today with little fanfare.

No. 17-6290 *Nwanguma v. Trump* Page 12

*Bible Believers*, 805 F.3d at 246 n.11 (emphasis in original).  The import of the footnote is not eminently clear.  It is appended to the statement that the first factor of "[t]he *Brandenburg* test precludes speech from being sanctioned as incitement to riot unless [ ] the speech explicitly or implicitly encouraged the use of violence or lawless action . . . ."  The footnote suggestion that a speaker's words be assessed "objectively" is identified as the view of some scholars.  The court neither adopted nor approved the objective standard and it forms no explicit part of the court's holding.  Instead, the court fell back, "with little fanfare," on "*Brandenburg*'s plain language (reinforced by *Hess*)" in focusing the inquiry on the words used by the speaker and whether they specifically advocated imminent violence or lawless action, either explicitly or implicitly.

The Trump defendants may have thus overstated the significance of the footnote in arguing that the proper test is whether the speech objectively urged imminent action.  On the other hand, the analysis in the *Bible Believers* ruling *does* reflect objective scrutiny of the subject speech.  Insofar as the court reasoned that "[t]he hostile reaction of a crowd does not transform protected speech into incitement," 805 F.3d at 246, the court made clear that the subjective reaction of any particular listener cannot dictate whether the speaker's words enjoy constitutional protection.  It is the words used by the speaker that must be at the focus of the incitement inquiry, not how they may be heard by a listener.  This, of course, is sensible and plaintiffs have not rebutted this understanding by reference to any contrary authority.

The bottom line is that the analysis employed in *Brandenburg*, *Hess*, *Snyder*, and *Bible Believers* evidences an unmistakable and consistent focus on the actual words used by the speaker in determining whether speech was protected.  Following these authorities, we hold that Trump's speech, too, is protected and therefore not actionable as an incitement to riot.

### III. CONCLUSION

"Speech is powerful."  *Snyder*, 562 U.S. at 460.  Yet, as a nation, we have chosen to protect unrefined, disagreeable, and even hurtful speech to ensure that we do not stifle public debate.  *Id.* at 461.  The First Amendment demands governmental tolerance of speech, in the name of freedom, subject to "a limited number of categorical exclusions."  *Bible Believers*, 805 F.3d at 243.  The speech that forms the premise for plaintiffs' incitement-to-riot claim does

Case 3:16-cv-00247-DJH-HBB Document 65 Filed 09/12/18 Page 15 of 17 PageID #: 717
Case: 17-6290 Document: 30-2 Filed: 09/11/2018 Page: 13 (15 of 17)

No. 17-6290    *Nwanguma v. Trump*    Page 13

not come within any of these limited exclusions. It follows that, even if the allegations were deemed to state a plausible claim under Kentucky law—a proposition we do not accept— prosecution of the claim would be barred by the First Amendment.

Accordingly, the district court's denial of the Trump defendants' motion to dismiss this claim is **REVERSED** and the case is **REMANDED** for entry of an order dismissing the Count III claim against the Trump defendants.

Case 3:16-cv-00247-DJH-HBB Document 65 Filed 09/12/18 Page 16 of 17 PageID #: 718
    Case: 17-6290   Document: 30-2   Filed: 09/11/2018   Page: 14   (16 of 17)

No. 17-6290                    *Nwanguma v. Trump*                    Page 14

---

## CONCURRENCE

---

HELENE N. WHITE, Circuit Judge, concurring. Although the majority opinion elides salient details of Trump's speech that make this a closer case for me than for the majority and overemphasizes the legal significance of the "don't hurt 'em" statement, I nevertheless concur in the reversal because I agree that the allegations are insufficient to constitute incitement to riot under Kentucky Revised Statutes § 525.040.

Given our agreement that plaintiffs have failed to state a claim under Kentucky law, there is no need to reach the constitutional issue, and we should not offer our advisory opinion on whether if the speech *had* violated the incitement statute, it would nevertheless be protected by the First Amendment, thus rendering the statute unconstitutional as applied.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-6290

KASHIYA NWANGUMA; MOLLY SHAH;
HENRY BROUSSEAU,

    Plaintiffs-Appellees,

    v.

DONALD J. TRUMP; DONALD J. TRUMP FOR
PRESIDENT, INC.,

    Defendants - Appellants.

```
                              ┌─────────────────────┐
                              │       FILED         │
                              │   Sep 11, 2018      │
                              │ DEBORAH S. HUNT, Clerk│
                              └─────────────────────┘
```

Before: McKEAGUE, GRIFFIN, and WHITE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of the Trump defendants' motion to dismiss this claim is REVERSED, and the case is REMANDED for entry of an order dismissing the Count III claim against the Trump defendants.

**ENTERED BY ORDER OF THE COURT**

_/s/ Deborah S. Hunt_
Deborah S. Hunt, Clerk